Sara Westbrook HARRELL,
Respondent,

v.

B. Dan WITT, D.O., et al., Appellants.

No. WD 39322.

Missouri Court of Appeals,
Western District.

June 7, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 2, 1988.

Application to Transfer Denied
Sept. 13, 1988.

William A. Lynch, Michael Thompson, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for appellants.

J. Michael Vaughan, Michael D. Strohbehn, Linde Thomson Fairchild Langworthy Kohn & Van Dyke, P.C. Kansas City, for respondent.

Before COVINGTON, J., Presiding, and SHANGLER and MANFORD, JJ.

COVINGTON, Judge.

Defendant, Dr. B. Dan Witt, an osteopathic urological surgeon, appeals from an adverse judgment entered upon a jury verdict of one million dollars in damages for negligent performance of surgery or, alternatively, for failure to obtain plaintiff Sara Harrell's informed consent to surgery. Dr. Witt raises five points of error; however, the issue regarding plaintiff's jury instruction which defines "informed consent" is decisive. Reversed and remanded.

Sara Harrell was diagnosed as suffering from a balloon-like cystocele on her bladder and a condition known as "stress urinary incontinence." Her physician recommended surgery and referred her to Dr. Witt, who confirmed the diagnosis and need for surgery, and performed a "cystourethoplasty" on Ms. Harrell.

The surgical procedure involved making an incision around the urethra to mobilize it and then anchoring it in a proper anatomical position. The purpose of the operation was to eliminate the cystocele and restore the urethra to its normal position, length, and contour in order to relieve Ms. Harrell's stress urinary incontinence.

Following the surgery, Ms. Harrell experienced sensitivity and swelling of the urethra. The discomfort and swelling continued beyond the three-month recovery period predicted by Dr. Witt. Ms. Harrell consulted a urologist, Dr. William Liefer, complaining of soreness, swelling and inability to have sexual intercourse. Dr. Liefer referred Ms. Harrell to Kansas University Medical Center where Dr. Kermit Kranz surgically removed about one centimeter of swollen vaginal tissue and retracted a portion of the urethra.

Plaintiff's cause of action was based on two alternative theories: 1) that Dr. Witt was negligent because he used a surgical procedure that was not accepted in the medical literature or community for primary treatment of stress urinary incontinence, or 2) that Dr. Witt negligently failed to obtain plaintiff's informed consent to the surgery performed.

At trial, plaintiff disputed Dr. Witt's diagnosis of stress urinary incontinence and claimed that he failed to inform her adequately of the nature of the surgical procedure, the risks involved, or the alternatives available. Dr. Kranz testified that cystourethoplasty was not an accepted surgical procedure in the medical literature for treatment of stress urinary incontinence. Dr. Liefer testified that Dr. Witt had not used that degree of skill and learning ordinarily used by members of the medical profession in informing Ms. Harrell of the surgery, its foreseeable risks and possible alternatives, in that, based upon the hospital consent form signed by Ms. Harrell, "there was not the usual information given to the patient."

Ms. Harrell submitted her claim to the jury through Instruction No. 9, a disjunctive verdict director based on MAI 21.01, which submitted both the negligent performance of surgery and the informed consent theories in the alternative:

### INSTRUCTION NO. 9

Your verdict must be for plaintiff Sara Westbrook Harrell against defendant B. Dan Witt, D.O. if you believe:

First, either:

defendant B. Dan Witt, D.O. performed surgery on Sara Westbrook Harrell that included a circular incision about the entire urethral meatus, the superior aspect of the urethra being dissected free and totally mobilized and the urethra then being brought up to a position immediately below the clitoris and anchored in this position, or

defendant B. Dan Witt, D.O. failed to obtain an informed consent from plaintiff Sara Westbrook Harrell for the surgical procedure that included a circular incision about the entire urethral meatus, the superior aspect of the urethra being dissected free and totally mobilized and the urethra then being brought up to a position immediately below the clitoris and anchored in this position, and

Second, defendant B. Dan Witt, D.O. in any one or more of the respects sub-

mitted in paragraph First, was thereby negligent, and

Third, as a direct result of such negligence, plaintiff Sara Westbrook Harrell sustained damage.

A separate instruction, Instruction No. 7, defined "informed consent" as follows:

### INSTRUCTION NO. 7

"Informed consent" as used in these instructions means a consent obtained after having used that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant's profession to inform the patient of the foreseeable risks incident to, and the existence and feasibility of possible alternatives to, the proposed surgery *and had a reasonable person been so informed they would not have consented to the surgery.*

(Emphasis added).

Citing *Aiken v. Clary*, 396 S.W.2d 668 (Mo.1965), this court recently noted that MAI 21.01 and its companion, MAI 11.06, are designated as mandatory instructions to be used in cases of medical negligence based upon failure of the physician to make full disclosure to the patient prior to obtaining consent to treatment. *Baltzell v. Van Buskirk*, 752 S.W.2d 902, 908 (Mo.App. 1988). *See* also Committee's Comment under "Notes on Use" following MAI 21.01 (1965 New) and *see* "Notes on Use" following MAI 11.06 (1978 Revision).

As observed by Judge Clark in *Baltzell v. Van Buskirk, supra:*

There is no MAI instruction to define informed consent because the term has no place in jury instructions in a case of medical negligence based on failure as a physician to inform the patient fully as to the risks and benefits of proposed treatment. Under *Aiken,* the theory of negligence is the same in a medical malpractice case whether the claim be for improper treatment or for inadequate disclosure preliminary to obtaining the patient's consent to treatment. The standard of care by which the physician's conduct is to be measured by the jury is defined in MAI 11.06, and that instruc-

tion guides the jury in deciding whether or not the physician has been negligent.

■ Use of MAI instructions is mandatory in any case where the instructions apply, and the failure to use such instructions is presumed to be prejudicial error. *Callicoat v. Acuff Homes, Inc.,* 723 S.W.2d 565, 571 (Mo.App.1987).

Prior to *Baltzell v. Van Buskirk* and at the time of the trial of the present case, the sole reported Missouri case which had addressed the issue of appropriate instructions for a case of medical negligence based upon failure to provide informed consent was *Kinser v. Elkadi,* 674 S.W.2d 226 (Mo.App.1984), in which the court approved the *Aiken* standard for defining negligence and a not-in-MAI definition of informed consent, stating that there was no applicable MAI instruction. This court does not agree with *Kinser.*

■ Ms. Harrell relied upon *Kinser,* in part, in wording Instruction No. 7. She asserts that there could have been no prejudice in the giving of Instruction No. 7. Her assertion is incorrect. Even assuming, arguendo, that the use of the *Kinser* instruction was correct, Ms. Harrell departed from the *Kinser* instruction by adding the words "... and had a reasonable person been so informed they would not have consented to the surgery." She thereby created a confusing and misleading direction to the jury, which negates her argument that there could have been no prejudice in the giving of Instruction No. 7.

When the instruction is read in its entirety, "informed consent" is defined to be consent based upon not only the requisite elements of the professional standard but also upon disclosure of information which would lead a reasonable person to withhold consent to the surgery. Read together conjunctively, the components make no sense. A finding of informed consent is precluded unless the jury finds that (1) the physician used ordinary professional skill and learning in informing the patient of the risks and alternatives, *and* (2) a reasonable person, so informed, would have refused the surgery. Moreover, the definition is

nonsensical and prejudicial when read in conjunction with Instruction No. 9, the plaintiff's verdict director, in its entirety. To defend a malpractice action submitted under Instruction No. 9, using Instruction No. 7 to define informed consent, the physician must, under the first alternative count of the verdict director, advocate the cystourethoplasty procedure, and, then, under the second alternative, take the position that a reasonable person would refuse the procedure.

Plaintiff asserts that she has assumed a greater burden by including the element of causation in the definition of informed consent. Instruction No. 7, however, is a definitional instruction, not a verdict director; the jury was not instructed to determine whether a reasonable person would or would not have consented to the surgery *as a direct result of* inadequate disclosure of risks associated with the surgical procedure. Additionally, analysis of the instruction in the context of the causation argument raised by Ms. Harrell again leads to inevitable juror confusion.

For the reasons stated, Instruction No. 7, and Instruction Nos. 7 and 9 read together, were prejudicially erroneous. MAI 21.01 and MAI 11.06 present the law to the jury without use of the term "informed consent." Their use is mandatory. On retrial, the first paragraph of the verdict director which submits the issue of informed consent should include sufficient ultimate facts which conform to the plaintiff's evidence regarding the specific risks which should have been disclosed and/or the existence and feasibility of specific possible alternatives to the treatment.

■ Ms. Harrell argues that Dr. Witt did not properly object to Instruction No. 7 and that he, therefore, waived any right to complain of instruction error. Dr. Witt made a general objection at trial and a specific, comprehensive and detailed assignment of error in his motion for a new trial. This was sufficient to preserve the error for appellate review under the express terms of Rule 70.03.

■ Ms. Harrell argues that, after the holdings of *Crabb v. MidAmerican Dairy-*

*men, Inc.,* 735 S.W.2d 714 (Mo. banc 1987); *Fowler v. Park Corp.,* 673 S.W.2d 749 (Mo. banc 1984); and *Hudson v. Carr,* 668 S.W.2d 68 (Mo. banc 1984), Rule 70.03 has limited vitality, and the failure to make specific objection at trial waives any claim of prejudice arising from an erroneous instruction. While failure to object may be considered on the issue of prejudice, *Crabb,* 735 S.W.2d at 718; *Fowler,* 673 S.W.2d at 756; *Hudson,* 668 S.W.2d at 71–72, it does not preclude a finding of prejudice.

The Missouri Supreme Court recently confirmed the continuing vitality of Rule 70.03 in *Goff v. St. Luke's Hospital of Kansas City,* 753 S.W.2d 557, 565 (Mo. 1988). In that case, the defendant made two allegations of instructional error, both based upon deviations from MAI 20.02. Despite the defendant's failure to object at trial before the instructions were submitted to the jury, the court, quoting Rule 70.03 in full, reviewed one of the allegations which had been preserved in the motion for new trial and found the deviation not to have been prejudicial. The court stated, however, that the defendant's failure to object had played no part in the decision. *Hudson* and *Fowler* were cited in *Goff* for the proposition that "the lawyer who remains silent is entitled to review under Rule 70.-03, but is not entitled to reversal unless prejudice is established."

The numerous cases cited by Ms. Harrell in support of her argument that Dr. Witt has waived his right to complain of prejudice have been considered and are found to be distinguishable. Four cases cited by Ms. Harrell involved errors of questionable prejudicial impact in which the court considered counsel's complete failure to object as an indication that any prejudice was slight. The other cases cited by Ms. Harrell are not applicable because they concerned the failure to offer substitute instructions or modifications to instructions which were attacked as vague or overbroad or which contained minor deviations from MAI.

■ In closing argument, Dr. Witt referred to evidence that he had performed

cystourethoplasty on 584 other persons. He argued that, if the procedure were so faulty that no reasonable person would consent to it, this meant that the procedure had been performed on 584 unreasonable people. Ms. Harrell argues that Dr. Witt's closing argument "took full advantage of" the challenged instruction, and that Dr. Witt cannot claim or show prejudice. The authorities cited by Ms. Harrell do not support her argument. Dr. Witt realized that the jury would be deciding the case under the erroneous Instruction No. 7, and that they would be considering in their deliberations whether a reasonable person, properly informed, would have refused the surgery. Dr. Witt simply argued from the evidence that reasonable people had, in fact, consented to the same surgery. His argument did not waive the error, nor does it now preclude him from asserting prejudice.

■ With respect to the other points raised by appellant not relevant to the instructional error, and, as assistance to the parties on retrial, it is appropriate to note that the trial court acted within its discretion with respect to evidentiary issues raised by the appellant and that submission of an informed consent claim was appropriate because the plaintiff made a submissible case on the issue through the testimony of Dr. Liefer.

The cause is reversed and remanded for a new trial.

All concur.