Patricia SMITH, Plaintiff/Respondent,

v.

S. Robert KOVAC, Defendant/Appellant.

No. 69082.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 25, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 1996.

Application to Transfer Denied
Sept. 17, 1996.

Robert J. Foley, St. Louis, for appellant.

Toni Griesbach, St. Louis, for respondent.

RHODES RUSSELL, Judge.

S. Robert Kovac, M.D., appeals the judgment against him in this medical malpractice action. Plaintiff, Patricia Smith, sought damages for injuries arising out of a hysterectomy she alleged was unnecessary. The jury returned a verdict in favor of plaintiff for $20,000 on which judgment was entered. We affirm.

On October 8, 1990, plaintiff visited Dr. Kovac for a routine gynecological checkup. Dr. Kovac performed a pap smear and pelvic examination and discussed her medical history with her. Dr. Kovac testified at trial that while plaintiff initially stated she had no complaints, later in the examination she noted she had experienced increasing blood flow and cramping during her menstrual cycle. Plaintiff testified that she had had no such experiences nor discussed them with Dr. Kovac. During the checkup, Dr. Kovac told plaintiff he believed she had a fibroid tumor causing an enlarged uterus and recommended she undergo an ultrasound test to more accurately determine the size of the uterus.

An ultrasound was performed on November 6, 1990, and plaintiff returned on November 10 to discuss the results with Dr. Kovac. After inspecting the ultrasound records, Dr. Kovac informed plaintiff she had a uterine tumor approximately the size of a two and a half month fetus, and advised her to have a hysterectomy. Dr. Kovac's office records indicate plaintiff called on November 15, 1990 to schedule the surgery. On November 24, plaintiff and her husband visited the office and consulted with Dr. Kovac about the hysterectomy. Dr. Kovac testified that he was then unaware that she had already scheduled the surgery. Plaintiff's testimony at trial indicated that Dr. Kovac's consultation did not include a discussion of alternative treatments. Plaintiff and her husband testified that when they asked about a second opinion, Dr. Kovac stated that they were in the best possible hands. They also testified that upon asking Dr. Kovac how important the surgery was he said, "How much do you value your life?" Plaintiff testified at trial that she did not schedule the procedure until after the November 24 consultation.

On January 2, 1991, plaintiff had a presurgical consultation at the hospital with the chief resident surgeon, Dr. Carolyn Prior-

Brown, who assisted Dr. Kovac in the surgery. Dr. Prior–Brown's admission note stated that plaintiff had a fibroid tumor and complained of heavy bleeding and cramping during menses. Prior to the surgery, plaintiff signed a consent form which stated that the operation, risks involved, and reasonable alternatives had been explained to her by Dr. Kovac. The hysterectomy took place on January 3rd.

Following the operation, plaintiff experienced pain, bleeding, cramping, and urinary retention which required her to wear a catheter for a week after her discharge from the hospital. The post-surgical pathology report did not indicate a uterine tumor. Dr. Kovac did not inform plaintiff of the lab results. At trial, she testified that she would not have had a hysterectomy if she had known she did not have a tumor.

In March, plaintiff's insurer denied coverage for the surgery, stating that the condition was a preexisting one related to two abortions their records disclosed. Plaintiff had never had an abortion, so she contacted Dr. Kovac to correct her records. He assured her he would cure any defects in his records. When the problem continued, plaintiff checked her hospital records and discovered they contained the inaccuracy. The insurance agent involved in the matter was a youth pastor at the church where plaintiff helps her husband in his ministry. Plaintiff, who preaches against abortion, suffered embarrassment and humiliation when church members came to believe she had had an abortion.

Plaintiff subsequently consulted a lawyer for help with her insurance difficulties and learned that the pathology report disclosed no tumor. On October 9, 1992, she filed suit against Dr. Kovac for medical malpractice. Plaintiff's second amended petition alleged negligence based on the performance of an unnecessary hysterectomy. Dr. Kovac filed a counterclaim for breach of contract based upon her failure to pay for the procedure. Plaintiff sent payment to Dr. Kovac, and the counterclaim was dismissed with prejudice. From the judgment entered on the jury verdict, Dr. Kovac appeals.

Dr. Kovac raises four points on appeal. The first alleges that plaintiff failed to present a submissible case of negligence. The second and third points challenge plaintiff's verdict directing instruction. Last, Dr. Kovac claims the trial court erred in not granting his motion for mistrial due to prejudicial comments made by plaintiff's counsel resulting in an improper and excessive verdict.

■ In determining whether plaintiff presented a submissible case, this court must view the evidence and inferences therefrom in the light most favorable to the plaintiff and disregard all contrary evidence. *Wigley v. Capital Bank of Southwest Mo.*, 887 S.W.2d 715, 718 (Mo.App.1994). The elements of a claim for medical malpractice are: 1) an act or omission by the defendant that failed to meet the requisite medical standard of care, 2) the act or omission was performed negligently, and 3) a causal connection between the act or omission and the plaintiff's injury. *Yoos v. Jewish Hospital of St. Louis*, 645 S.W.2d 177, 183 (Mo.App.1982).

Dr. Kovac's attack on the submissibility of plaintiff's case focuses primarily on the second element. He contends that plaintiff failed to prove negligence because she did not establish that the performance of an unnecessary hysterectomy constitutes negligence. Dr. Kovac argues that because the evidence showed that a hysterectomy is an elective procedure which a woman can have for almost any reason, labeling it unnecessary is not sufficient to prove negligence.

■ The test for negligence in this case is whether Dr. Kovac, in his actions, failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of his profession. *Washington by Washington v. Barnes Hospital*, 897 S.W.2d 611, 615 (Mo. banc 1995). The exact nature of Dr. Kovac's duty to the plaintiff under the circumstances of this case and the determination of whether he breached that duty must be established by expert medical testimony. *Yoos*, 645 S.W.2d at 183. Presentation of such testimony makes a submissible case, and once such testimony is presented, the ultimate determination whether Dr. Kovac, under the evidence, was negli-

gent becomes a jury question. *Kinser v. Elkadi,* 674 S.W.2d 226, 230 (Mo.App.1984).

▉ Plaintiff's expert, Dr. Cameron, a specialist in obstetrics and gynecology, testified that Dr. Kovac's treatment of plaintiff failed to meet the accepted standard of care. He stated that Dr. Kovac told plaintiff she had a tumor which did not exist and impressed upon her the necessity for having a hysterectomy when no such necessity existed. Dr. Cameron further testified that plaintiff was totally nonsymptomatic, exhibiting no indications for her hysterectomy. In the absence of other symptoms, in Dr. Cameron's opinion, plaintiff's slightly enlarged uterus did not warrant a hysterectomy. Dr. Cameron's testimony established facts that Dr. Kovac breached his duty to plaintiff making a submissible case for the jury to decide the ultimate issue. The trial court properly denied Dr. Kovac's motions for directed verdict and judgment notwithstanding the verdict. Point denied.

Dr. Kovac's second and third points allege the trial court erred in giving Instruction No. 6, plaintiff's verdict directing instruction. Instruction No. 6 read:

> Your verdict must be for the plaintiff Patricia Smith and against defendant S. Robert Kovac, M.D. if you believe:
>
> First, defendant Kovac performed an unnecessary hysterectomy, and
>
> Second, defendant Kovac was thereby negligent, and
>
> Third, as a direct result of such negligence plaintiff sustained damage.

In accordance with MAI 11.06, the jury was also instructed that "[t]he term negligent or negligence as used in these instructions means the failure to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of defendant's profession."

▉ Use of Missouri Approved Instructions is mandatory in any case where the instructions apply. Rule 70.02(b); *Karnes v. Ray,* 809 S.W.2d 738, 740 (Mo.App.1991). Rule 70, however, recognizes that approved instructions may not be appropriate to every factual situation. *Id.* Therefore, Rule 70.02(e) provides for modification of an existing MAI or drafting of a not-in-MAI instruction. The test of a modified MAI or not-in-MAI instruction is whether it follows the substantive law and can be readily understood by the jury. *Murphy v. City of Springfield,* 794 S.W.2d 275, 278 (Mo.App. 1990). All instructions should require a finding of all ultimate facts necessary to sustain a verdict. *Grindstaff v. Tygett,* 655 S.W.2d 70, 73 (Mo.App.1983).

▉ Dr. Kovac first argues that Instruction No. 6 was improper because the evidence did not show that the performance of an unnecessary hysterectomy constituted a breach of the duty owed to plaintiff by Dr. Kovac, and the instruction itself failed to define any such duty. This contention is primarily a duplicate of Dr. Kovac's first point on appeal, that the evidence was insufficient to show that the performance of an unnecessary hysterectomy constituted negligence. Instruction No. 6 is a modified version of MAI 21.01, which contains no definition of duty. Evidence was presented at trial which showed that Dr. Kovac examined plaintiff, recommended a hysterectomy, performed the surgery, and charged plaintiff for his services. This evidence was sufficient to establish a physician-patient relationship, and thus a duty to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of his profession. *Niccoli v. Thompson,* 713 S.W.2d 579, 584 (Mo.App.1986). This duty was defined for the jury in MAI 11.06. As discussed above, the exact nature of that duty in the circumstances of this case, and its breach, were sufficiently established by the testimony of Dr. Cameron.

Dr. Kovac relies on *Karnes v. Ray,* 809 S.W.2d 738 (Mo.App.1991), for the proposition that the verdict director in the instant case is deficient due to its failure to define a duty. This reliance is misplaced. *Karnes* involved a laborer who was injured when the defendant cut down a tree which, as it fell, struck another tree which, in turn, struck the plaintiff. The verdict directing instruction informed the jurors, in part, that they must find for plaintiff if they believed "[f]irst, defendant Joe Ray felled a tree which struck

another tree which struck Joseph Karnes." The Southern District found that the instruction did not submit the ultimate facts necessary to sustain a verdict because it failed to require a duty on the part of the defendant to protect the plaintiff. The court stated that the instruction failed to require the jury to find a particular unsafe act or omission of the defendant which caused the injury. The jury was free to speculate on its own why and in what manner the felling of the tree was negligent.

In contrast, the verdict director in this case did submit to the jury plaintiff's theory of why the performance of the surgery was negligent, namely because it was unnecessary. While the instruction in *Karnes* merely described a series of events, Instruction No. 6 required the jury to find a particular unsafe act by the defendant that caused the injury: the performance of an unnecessary hysterectomy.

Dr. Kovac next claims that Instruction No. 6 is not simple, impartial, or free from argument as required by Rule 70.02(e). This is so, Dr. Kovac contends, because one possible interpretation of the instruction is that the jury must only find whether the hysterectomy was an unnecessary procedure, and if so, the instruction already defined an unnecessary surgery as negligence. The issue of whether the performance of the hysterectomy was, in fact, negligent was a disputed issue in this case which Dr. Kovac argues was never presented to the jury. He maintains that the instruction amounted, in effect, to a remark by the judge that he felt unnecessary surgery is per se an act of negligence.

This argument ignores the second subparagraph of Instruction No. 6 that the jury must find also "that defendant Kovac was thereby negligent." In reviewing instructions, jurors should be credited with ordinary intelligence, common sense, and an average understanding of the English language. *Graham v. Goodman*, 850 S.W.2d 351, 355 (Mo. banc 1993). The clear language of the instruction required the jury to find that Dr. Kovac performed an unnecessary surgery, and was thereby negligent, and thereby caused plaintiff's injury (emphasis added). The test of correctness of an in-

struction is how the instruction will naturally be understood by the average juror. *Tietjens v. General Motors Corp.*, 418 S.W.2d 75, 86 (Mo.1967). The average juror would naturally understand that not only must the jury find that the hysterectomy performed by Dr. Kovac was unnecessary, but also whether that performance constituted negligence. The interpretation offered by Dr. Kovac is not reasonable and would require the jury to ignore the clear language of the instruction. In the absence of exceptional circumstances, appellate courts assume that a jury obeys a trial court's directions and follows its instructions. *Barlow v. Thornhill*, 537 S.W.2d 412, 422 (Mo. banc 1976). The instruction meets the requirements of Rule 70.02(e).

Finally, Dr. Kovac asserts the undefined phrase "unnecessary hysterectomy" contained within Instruction No. 6 was confusing and provided the jurors with a roving commission to determine why and in what manner Dr. Kovac was negligent. As evidence of the confusion presented by the phrase "unnecessary hysterectomy," Dr. Kovac points out a note sent by the jury to the judge. Toward the end of their deliberations, the jurors sent to the judge a note containing the question, "If we determine the hysterectomy was unnecessary does that make him negligent?" The jury's query about subparagraph one, however, does not taint the instruction. *Kampe v. Colom*, 906 S.W.2d 796, 805 (Mo.App.1995). If this were the criterion, each question submitted by a jury about an instruction would render the instruction erroneous. *Id.*

Dr. Kovac contends that any confusion created by the phrase "unnecessary hysterectomy" could have been resolved by inclusion of a definition such as that used in *Kinser v. Elkadi*, 674 S.W.2d 226 (Mo.App.1984). The verdict directing instruction in *Kinser* was nearly identical to that in the present case. In *Kinser*, however, a not-in-MAI instruction was submitted which defined "unnecessary surgery" as "surgery which a doctor (using that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant's profession) would have refused to perform even

though the patient consented to it." The court did not consider the doctor's challenges to the instruction on appeal because they were not properly preserved at trial. *Kinser,* therefore, does not stand for the proposition that such a definition is required.

We believe the more recent case of *Harrell v. Witt,* 755 S.W.2d 296 (Mo.App.1988), is instructive. *Harrell* was an informed consent case in which a separate instruction defining "informed consent" was submitted to the jury. The court held that MAI instructions 21.01 and 11.06 are mandatory in medical negligence cases, and because the definition was not included therein it had no place in the jury instructions in a case of medical malpractice. The *Harrell* court found that the definition, combined with the verdict directing instruction, was confusing and misleading. The standard of care by which the physician's conduct is to be measured by the jury is defined in MAI 11.06, and that instruction guides the jury in deciding whether or not the physician has been negligent. *Id.* at 298. Instruction No. 6 was properly submitted without a definition of "unnecessary hysterectomy."

Dr. Kovac relies on *Grindstaff v. Tygett,* 655 S.W.2d 70 (Mo.App.1983), in support of his assertion that Instruction No. 6 granted a roving commission. The verdict director in *Grindstaff* required the jury to determine whether "defendant performed a midforceps rotation delivery when such procedure was not medically proper." The *Grindstaff* court held the phrase "not medically proper" did not submit the ultimate facts which define for the jury plaintiffs' specific theory of negligence. The court concluded that based on the experts' testimony, plaintiffs' generalized theory in the instruction contained at least two more specific theories of negligence.

█ The present case is distinguishable from *Grindstaff.* Instruction No. 6 submitted plaintiff's specific theory that, as asserted by her expert, a hysterectomy was inappropriate and that its performance was itself a deviation from the accepted standards of medical care. From Dr. Cameron's testimony, the jury could find that Dr. Kovac had a duty not to perform a hysterectomy. Plaintiff had the right to choose any theory that

was supported by the evidence. *Yoos,* 645 S.W.2d at 191. Here, her theory was supported by the evidence, and it was properly submitted.

█ Dr. Kovac's position is, in essence, a reiteration of his statement that performance of an elective surgery cannot, of itself, constitute negligence. We do not accept this position. Dr. Cameron's testimony, which the jury apparently believed, was that performance of the operation when the uterus was only slightly enlarged and no other symptoms were present amounted to negligence. Thus, a factual question was raised which the instructions put to the jury. This court should reverse only for defects of substance with substantial potential for prejudicial effect. *Fowler v. Park Corp.,* 673 S.W.2d 749, 755–56 (Mo. banc 1984). We find no error. Points two and three are denied.

█ Dr. Kovac's final point alleges the trial court erred in denying his motion for mistrial. Dr. Kovac asserts that while cross-examining him, plaintiff's counsel made numerous comments which cumulatively served to inflame the prejudice of the jurors causing an improper and excessive verdict. The decision of whether or not to grant a mistrial rests within the sound discretion of the trial court. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 208 (Mo. banc 1991). Because mistrials are the most drastic remedy for trial error, they are reserved only for situations in which the error is so grievous that the prejudice cannot be removed any other way. *Id.* Unless the trial court abused its discretion, we will not interfere with or reverse its decision. *McDaniels v. Ehrhard,* 877 S.W.2d 688, 690 (Mo.App.1994).

█ Dr. Kovac maintains that the size of the verdict demonstrates that it was the result of passion and prejudice. The day is past when Missouri appellate courts engage in close scrutiny of the amounts awarded by juries for personal injuries. *Id.* We rely on the trial judge, who is in a much better position than we are to assess the verdict. *Id.* Here, we cannot say that the jury award of $20,000 for the damages plaintiff sustained was so excessive as to indicate jury misconduct. Nevertheless, we have also examined

Dr. Kovac's complaints and do not find them to be errors.

■ On appeal, the size of the verdict alone will not establish passion and prejudice by the jury. *Fowler,* 673 S.W.2d at 758. Appellant must show trial error or misconduct by the prevailing party that was responsible for producing the passion or prejudice. *Id.* As error, Dr. Kovac cites to various comments by plaintiff's counsel during cross-examination of him which related to Dr. Kovac's state of mind while treating her. Dr. Kovac specifically objects to plaintiff counsel's line of questioning mean to suggest that Dr. Kovac performed the hysterectomy either to make money or to fill a statistical sample for a professional article. Several of these statements were not objected to at trial. A party must object at the earliest opportunity to opposed evidence, or the objection is waived. *Chism v. Steffens,* 797 S.W.2d 553, 559 (Mo.App.1990). Of those that were properly preserved, the objections in most cases were either sustained and the jury admonished not to consider the question, or the question was withdrawn. On appeal, we must assume that a jury obeys a trial court's directions and follows its instructions. *Barlow,* 537 S.W.2d at 422.

■ The trial court overruled Dr. Kovac's objection as to only one question. When asked if it were true that "the more patients one has in a study the more credibility the article gets in your professional field," Dr. Kovac replied, "No." The trial court has substantial discretion in ruling on the admissibility of testimony, and its ruling will not be disturbed on appeal absent an abuse of discretion. *Graves v. Atchison–Holt Elec. Coop.,* 886 S.W.2d 1, 3 (Mo.App.1994). On the record before us, we do not find that the discretion was abused when the trial court allowed that one question as to Dr. Kovac's motive to perform the hysterectomy. Furthermore, redirect examination is the appropriate method to rehabilitate a witness and to clarify any doubts as to the import of his testimony created by cross-examination. *Cignetti v. Camel,* 692 S.W.2d 329, 338 (Mo.

App.1985). Any potential prejudice could have been cured at that point. Point denied.

Judgment is affirmed.

GERALD M. SMITH, P.J., and GARY M. GAERTNER, J., concur.