In the Matter of the Care and Treatment of Clifford T. BOONE, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 82669–01.

Missouri Court of Appeals, Eastern District, Division One.

Aug. 24, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 2004.

Application for Transfer Denied Nov. 23, 2004.

Emmett D. Queener, Assistant Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gary L. Gardner, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Clifford T. Boone ("Boone"), appeals from the judgment of the Circuit Court of St. Louis County, after a jury in the probate division found Boone to be a sexually violent predator ("SVP") under section 632.486 RSMo 2000.[1] We affirm.

On September 24, 1993, Boone was convicted of rape and was sentenced to eight years imprisonment. He was scheduled

---

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

for release on February 18, 2000. However, the respondent, the State of Missouri ("state"), filed a motion on February 3, 2000 pursuant to section 632.480 *et seq.* seeking to indefinitely confine Boone as a SVP. A probable cause hearing was held on February 17, 2000.

At the probable cause hearing, evidence of Boone's criminal record was admitted, which included, *inter alia,* his 1993 conviction for rape and a conviction in 1988 for sexual abuse in the first degree. Jerry Hoeflein, an Associate Psychologist for the Missouri Department of Corrections, testified for the state. Hoeflein, who interviewed Boone for approximately four hours and reviewed his file, served as a therapist in the Missouri Sexual Offender Program ("MOSOP"). He described the MOSOP as a group therapy program to help individuals learn to not reoffend. He explained that the MOSOP is set up in two stages. The first stage lasts three months and is a "psychoeducational phase" where the participants are taught certain material. Once a participant completes Phase I, they enter Phase II, "which is approximately nine months of cognitive behavioral therapy" conducted in a group setting.

Hoeflein testified about Boone's participation in the MOSOP. He stated that Boone completed Phase I of the MOSOP, then started Phase II. Boone was removed from Phase II for a conduct violation prior to completing the course, but he was later offered a second opportunity to enroll and complete Phase II. Boone declined to re-enroll in the program.

Hoeflein further testified that in addition to the convictions for rape and sexual abuse, Boone had several other sexual assault charges in the past, which for various reasons did not result in convictions. Hoeflein stated Boone showed no remorse for any of his victims, and that he denied he had ever committed a sexual assault, including the offenses for which he was convicted.

Hoeflein testified that he diagnosed Boone with an antisocial personality disorder, and that it was his opinion that Boone would be likely to commit another sexual assault if he was not confined. Following the hearing, the probate court found probable cause to hold Boone as a SVP.

Prior to the jury trial to determine whether the state could detain Boone as a SVP, Boone filed numerous motions, including a motion styled "Motion to Dismiss: Violation of Freedom of Religion, With Incorporated Suggestions in Support." In that motion, Boone argued that the SVP statutes were unconstitutional as applied to him because he was targeted as a SVP because of his refusal, on religious grounds, to complete the MOSOP. Boone attached a letter to his motion that he had written to Cameron Daniel, his therapist in the MOSOP. In that letter, Boone told Daniel that he was declining the opportunity to re-enroll because of his belief that he has "a sin problem which the MOSOP program does not address and even seems not to acknowledge." He continued that he believed that "the Word of God *only* has the answers" to his problem and that *"only the Lord Jesus Christ and His Holy Spirit* can make any necessary changes in my life." (Emphasis in the original.)

In his motion to dismiss, Boone further argued that he was targeted for SVP status because he did not complete the MOSOP, which he described as "a cognitive behavioral modification program grounded in the practice of psychology." He continued that such psychological treatment is a form of secular humanism, which he argued is a religion for First Amendment purposes. Boone argues that attempting to force him to complete a program based on secular humanism violated the Establishment Clause and the Free Exercise

Clause of the First Amendment of the United States Constitution and Article I, Sections 5 and 6 of the Missouri Constitution.

The case proceeded to trial, and the jury determined that Boone was a SVP under the statutes.

In the jurisdictional statement of his brief, Boone argues jurisdiction lies in the Missouri Supreme Court because this appeal involves a real and substantial claim challenging the constitutionality of a Missouri statute. We transferred this case to the Supreme Court, which found that the case was properly under our jurisdiction and transferred it back to us.

In his first point on appeal, Boone argues the probate court erred in denying his motion to dismiss because the MOSOP establishes a secular humanist religion that is hostile to theistic religious beliefs. Therefore, according to Boone, using his election not to participate on religious grounds to target him for SVP commitment was a substantial burden on his right to free exercise of his religious beliefs.

■ We will first evaluate Boone's establishment claim and then his free exercise claim.

■ The First Amendment has been made applicable to the states through incorporation into the Fourteenth Amendment. *Oliver v. State Tax Com'n of Missouri*, 37 S.W.3d 243, 248 (Mo.banc 2001). The United States Supreme Court has provided a test for determining whether a statute violates the Establishment Clause. First, the statute must have a secular legislative purpose. *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Second, its primary or principal effect must be one that neither advances nor inhibits religion. *Id.* Third, the statute must not encourage government to

be excessively entangled in religion. *Id.* at 613, 91 S.Ct. 2105.

Section 589.040.1 provides that the director of the department of corrections is to develop a treatment program for people serving time for sexual assault offenses. Further, "the ultimate goal [in developing these programs] shall be the prevention of future sexual assaults by the participants in such programs ..." Section 589.040.1. Therefore, it is clear that the MOSOP has a secular legislative purpose.

Boone argues the MOSOP therapist's report, which stated "[Boone's] internalized distortions prevented him from benefiting from the concepts presented [through the MOSOP] and he consistently exhibited resistance to change or things that he did not agree with," illustrates that Boone's religious convictions prevented him from participating in the MOSOP. Boone maintains that the MOSOP is, in effect, the state's advancement of a religion, secular humanism, and such advancement violates the Establishment Clause.

We disagree. The stated goal of the program is to prevent recidivism in sex offenders. Boone is unquestionably a repeat sex offender. We find that as applied in this case the MOSOP does not excessively entangle the government with a particular religion in violation of the United States or Missouri Constitutions.

■ We now turn to the question of whether requiring Boone to participate in the MOSOP burdened his right to free exercise in violation of the United States and Missouri Constitutions.

The Missouri Constitution deals with separation of church and state with greater particularity than the United States Constitution. *Oliver*, 37 S.W.3d at 251. The Missouri Constitution provides "[t]hat all men have a natural and indefeasible right to worship Almighty God according

to the dictates of their own consciences [and] that no human authority can control or interfere with the rights of conscience ..." Mo. Const. art. I, § 5. Further, "no person can be compelled to ... attend any place or system of worship ..." *Id.* at § 6.

The Free Exercise Clause absolutely prohibits governmental regulation of religious beliefs. *Cantwell v. State of Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). It guarantees that persons shall have the right to freely exercise their religion and prohibits a government-established religion. *Id.* The First Amendment protects both freedom to believe and freedom to act. *Id.* Freedom to believe is absolute. *Id.* Freedom to act, however, remains subject to regulation for the protection of society. *Id.* at 304, 60 S.Ct. 900.

Where there is a challenge relating to the constitutional protection of free exercise, a compelling governmental interest is not necessary to justify a law that is neutral and of general applicability, even if the law has the incidental effect of burdening a particular religious practice. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). Neutrality and general applicability are interrelated. *Id.* When one is not satisfied, it is likely that the other has not been satisfied. *Id.* "A law failing to satisfy these requirements must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.* at 531–32, 113 S.Ct. 2217.

In this case, we need not determine whether the law is neutral and generally applicable because there is a compelling government interest, *i.e.,* protecting the public from future crime. *See Whitnell v. State,* 129 S.W.3d 409, 420 (Mo.App. E.D. 2004). The MOSOP's goal is to prevent recidivism in sex offenders. Further, the program is narrowly tailored to advance that goal. It is a voluntary program. Failure to complete the MOSOP does not result in any additional punishment beyond what has already been imposed. *Winslow v. Nixon,* 93 S.W.3d 795, 800 (Mo.App. E.D.2002) *quoting State ex rel. Nixon v. Pennoyer,* 36 S.W.3d 767, 770 (Mo.App. E.D.2000). Rather, its only effect is to extend the possible early release date. *Id.* at 770–71. Offenders who do not successfully complete the MOSOP for whatever reason are evaluated at the end of their confinement period. Information gained from that evaluation could be used in potential proceedings under the SVP statute. However, SVP status is not determined by the end of confinement report. It is determined by a jury based on a review of all of the evidence.

After completing over half of the MOSOP, Boone was terminated from the program when he was placed in disciplinary segregation for creating a disturbance in his housing unit. While Boone was in the MOSOP, he was "inconsiderate, unreceptive, and occasionally aggressive." Further, "[h]e appeared to be unwilling to accept responsibility for his behavior in his present offense and he was so preoccupied with his decent person facade that he showed no remorse or empathy for his victims." Dr. Richard Scott, a psychologist who examined Boone to help determine whether Boone was a SVP, testified that Boone was at high risk of re-offending sexually in the future.

Therefore, we find the MOSOP was not an unconstitutional infringement of Boone's right to free exercise of his religious beliefs. Point denied.

In his second point on appeal, Boone argues the probate court abused its discretion in admitting evidence that he suffers from antisocial personality disorder

("APD") because APD does not meet the statutory requirement of "mental abnormality" in that it does not distinguish a condition specifically predisposing a person to commit a sexually violent offense from a personality disposed to criminal conduct in general.

We have reviewed the briefs of the parties and the record on appeal with respect to this claim. As an extended opinion would serve no jurisprudential purpose, we affirm this part of the judgment pursuant to Rule 84.16(b).

■ In his third point on appeal, Boone argues the probate court erred in denying his request for a *Frye* hearing on the admissibility of risk prediction based on the results of actuarial instruments.

The Missouri Supreme Court has held that the standard of admissibility of expert testimony in civil cases is that set out in section 490.065. *State Bd. of Reg. Healing Arts v. McDonagh,* 123 S.W.3d 146, 153 (Mo.banc 2003). Therefore, the probate court did not err in denying Boone's request for a *Frye* hearing.

■ Questions concerning the admission of evidence are placed within the sound discretion of the trial court. *Yaeger v. Olympic Marine Co.,* 983 S.W.2d 173, 186 (Mo.App. E.D.1998). Unless there is a substantial or glaring injustice, we will affirm the trial court's evidentiary ruling. *Id.*

Section 490.065 states:

1. In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

\* \* \*

3. The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

Dr. Scott testified that he was a licensed psychologist and a certified forensic examiner. He has a doctorate in clinical psychology from Saint Louis University. Dr. Scott also testified that he has received specialized training and supervision to perform evaluations of criminal defendants. Dr. Scott has performed approximately four hundred forensic evaluations, 17 of which were sexually violent predator evaluations.

Dr. Scott performed the evaluation of Boone. Dr. Scott testified that "[m]ost of the examiners, including [himself], use what are called actuarial instruments or risk assessment tools." Then, Dr. Scott testified, when the interviews and reviews of the records and actuarial instruments are complete, he determines his opinion. Further, the records and information Dr. Scott reviewed with regard to Boone were the type that are reasonably relied on in the psychology field to diagnose and form opinions. These records included the orders requiring the evaluation, the Department of Corrections records, treatment records from the MOSOP, family services records, psychiatric treatment records, police reports from various charges and convictions, court documents, Missouri Sex Offender Treatment Center records, and two actuarial instruments. Lastly, Dr. Scott testified that "one or another of these [actuarials] is used in every state that has a sexual predator law."

Therefore, we find the trial court did not abuse its discretion in admitting the actuarials as part of Dr. Scott's expert opinion of risk prediction. Point denied.

■ In his fourth point on appeal, Boone argues the probate court erred in submitting Instruction No. 8 because informing the jury that "treatment" is the purpose of the law minimizes the jury's responsibility to determine whether Boone is a SVP.

Boone argues that focusing the jury's attention on treatment improperly directs the jury's attention away from secure confinement, which would result if the jury found that Boone was a SVP.

■ We will affirm the trial court's ruling concerning a not-in-MAI instruction if it follows the substantive law and can be readily understood by the jury. *Smith v. Kovac*, 927 S.W.2d 493, 497 (Mo.App. E.D. 1996). When reviewing instructions, jurors are presumed to have ordinary intelligence, common sense, and an average understanding of the English language. *Id.* at 498. In the absence of exceptional circumstances, we assume the jury obeyed the trial court's directions and followed its instructions. *Id.* We should reverse only for defects of substance that have substantial potential for prejudicial effect. *Id.* at 499.

Section 632.492 RSMo (2004) provides that "[i]f the trial is held before a jury, the judge shall instruct the jury that if it finds that the person is a sexually violent predator, the person shall be committed to the custody of the director of the department of mental health for control, care and treatment."

In this case, Instruction No. 8 stated "[i]f you find [Boone] to be a sexually violent predator, [Boone] shall be committed to the custody of the director of the department of mental health for control, care and treatment." Instruction No. 6 is the verdict directing instruction in which the jury is charged with determining whether Boone is a SVP.

We find that Instruction No. 8 did not have a substantial potential for prejudicial effect. An average jury would understand that a finding that Boone was a SVP would subject him to the "control, care and treatment" of the department of mental health. Instruction No. 8 did not improperly minimize the jury's responsibility in finding whether Boone was a SVP. Therefore, we find the trial court did not err in submitting Instruction No. 8. Point denied.

In his fifth point on appeal, Boone argues the probate court erred in denying his motion to dismiss because Section 632.495 *et seq.* failed to provide for less restrictive alternatives to secure confinement.

We have reviewed the briefs of the parties and the record on appeal with respect to this claim. As an extended opinion would serve no jurisprudential purpose, we affirm this part of the judgment pursuant to Rule 84.16(b).

Based on the foregoing, we affirm the judgment of the probate court.

ROBERT G. DOWD, JR., J. and MARY R. RUSSELL, J., concur.