

# SUPREME COURT OF MISSOURI
## en banc

MARY DOE,                     )       *Opinion issued February 13, 2019*

                                )

          Appellant,          )

                                )

v.                              )       No.  SC96751

                                )

MICHAEL L. PARSON, et al.,      )

                                )

         Respondents.      )

**Appeal from the Circuit Court of Cole County, Missouri**
**Honorable Jon Edward Beetem, Judge**

Mary Doe appeals the circuit court's judgment dismissing with prejudice her second amended petition seeking to enjoin the enforcement of the portion of the Missouri Informed Consent Law, section 188.027, RSMo Supp. 2014, which she alleges required her to read certain "tenets" adopted in section 1.205, RSMo 2000, regarding when life begins; to have and pay for an ultrasound; and to wait 72 hours before she could have an abortion. She does not allege such requirements would impose an undue burden on her right to an abortion.  Rather, she alleges requiring her to read the booklet violates her rights under the Establishment Clause of the First Amendment to the United States Constitution, and both reading the booklet and allegedly requiring her to have an

ultrasound violate her rights under the Missouri Religious Freedom Restoration Act (RFRA), section 1.302.1, RSMo Supp. 2013, because these alleged requirements conflict with her religious belief a fetus is not a person.

This Court affirms denial of Ms. Doe's request for injunctive relief. The informed consent law does not adopt any religious tenet, as Ms. Doe claimed. Rather, it requires those seeking an abortion be offered a booklet which, in part, repeats two principles (referred to by Ms. Doe as "tenets") set out in section 1.205. But Ms. Doe does not challenge section 1.205.

Moreover, the informed consent law neither requires a pregnant woman to read the booklet in question nor requires her to have or pay for an ultrasound. It simply provides her with that opportunity. And, while Ms. Doe mentions the 72-hour waiting period, she does not allege how that waiting period conflicts with her religion nor that it was an undue burden, nor did she seek to enjoin its enforcement prior to the expiration of that waiting period. The circuit court did not err in dismissing Ms. Doe's petition for failure to state a claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Ms. Doe found out she was pregnant in February 2015 and determined not to carry her child to term. In early May 2015, Ms. Doe took a bus from Greene County to St. Louis, Missouri, which at the time was the only city in Missouri with a Planned

---

[1] On appeal of a dismissal for failure to state a claim, the "facts alleged in the petition are assumed to be true, and all reasonable inferences are liberally construed in favor of the plaintiff." *Smith v. Humane Soc'y of the U.S., 519 S.W.3d 789, 798 (Mo. banc 2017)*.

Parenthood clinic that provide a woman a legal abortion. On May 8, she made her first visit to Planned Parenthood to obtain an abortion.

Under Missouri's informed consent law, "The physician who is to perform or induce the abortion or a qualified professional shall provide the woman with the *opportunity* to view at least seventy-two hours prior to the abortion *an* active ultrasound of the unborn child and hear the heartbeat of the unborn child if the heartbeat is audible." *§ 188.027.1(4)* (emphasis added). The informed consent law also requires "[t]he physician who is to perform or induce the abortion or a qualified professional" must also "present[] the woman, in person," with a booklet that "prominently display[s]" two statements, which Ms. Doe refer to as the "Missouri tenet." The first is: "The life of each human being begins at conception." The second is: "Abortion will terminate the life of a separate, unique, living human being." *§ 188.027.1(2)*. The woman seeking the abortion is required to certify she received the required information and opportunities.[2]

---

[2] In regard to certification, section 188.027.3 provides:

> No abortion shall be performed or induced unless and until the woman upon whom the abortion is to be performed or induced certifies in writing on a checklist form provided by the department that she has been presented all the information required in subsection 1 of this section, that she has been provided the opportunity to view *an* active ultrasound image of the unborn child and hear the heartbeat of the unborn child if it is audible, and that she further certifies that she gives her voluntary and informed consent, freely and without coercion, to the abortion procedure.

(Emphasis added).

Upon her arrival at Planned Parenthood, Ms. Doe presented the staff with a letter indicating she already voluntarily reviewed the booklet and, from that reading, knew she did not agree with the statements in the booklet that the "life of each human being begins at conception" or that "[a]bortion will terminate the life of a separate, unique, living human being." Ms. Doe's letter also purported to "absolve" Planned Parenthood from compliance with the informed consent law requirements, and Ms. Doe requested an immediate abortion.

Planned Parenthood refused her request and complied with the informed consent law by providing Ms. Doe with the opportunity to read the booklet, the opportunity to have an ultrasound, and the opportunity to listen to the fetal heartbeat. It also told her she would have to wait 72 hours to have an abortion. Although she had already voluntarily read the booklet, and although the informed consent law does not provide a woman seeking an abortion must read the booklet, Ms. Doe chose to accept and reread the booklet and acknowledged its receipt.

Ms. Doe also made the choice to have and pay for an ultrasound even though the informed consent law merely requires a woman be informed about and given "the opportunity to view" *an* active ultrasound. After being informed she had the opportunity to listen to the heartbeat, Ms. Doe declined to do so.

During the required 72-hour waiting period, Ms. Doe filed her petition in this lawsuit. The petition did not allege the offer of the booklet, an ultrasound opportunity, or the 72-hour waiting period imposed an undue burden on her right to obtain an abortion. Neither did she seek a temporary restraining order or preliminary injunction against the

4

enforcement of the informed consent law. Instead, she allowed service to proceed in regular fashion as she waited 72 hours and then returned to the clinic and received an abortion. The circuit court dismissed Ms. Doe's initial petition without prejudice.

Ms. Doe in January 2016 filed her second amended petition, which again alleged Missouri's informed consent law is null and void because it violates her rights under the Establishment Clause of the United States Constitution and under RFRA. In particular, she objected to the informed consent law's requirement that the abortion provider give her a booklet containing the "Missouri tenet." She also objected that the informed consent law required a provider offer her the opportunity to view an ultrasound and hear her fetus's heartbeat and wait 72 hours before performing the abortion.

In support of her claims, Ms. Doe further alleged she is a member of the Satanic Temple and, under its tenets, her "body is inviolable and subject to her will alone;" she must make health-related decisions "based on the best scientific understanding of the world, even if the science does not comport with the religious or political beliefs of others;" fetal tissue "is part of her body and not a separate, unique, living human being;" she has the sole authority to decide "whether, when and how to proceed with" the termination of her pregnancy; "[s]he may, in good conscience, have an abortion without regard to the current or future condition of her Fetal Tissue;" and she must not support "religious, philosophical or political beliefs" that (1) "imbue her Fetal Tissue with an existence separate, apart or unique from her body," (2) "cede control to a third party over the Removal Procedure," and (3) promote "the idea Fetal Tissue is a human being or imbued with an identity separate, apart and unique from her body."

5

The second amended petition asked the circuit court to enjoin the State from enforcing the informed consent law, to declare that those who hold Ms. Doe's religious beliefs may obtain an abortion without complying with the informed consent law, and to permit physicians to provide abortions without complying with the informed consent law. She also sought costs and attorney fees. The circuit court dismissed the amended petition, this time with prejudice. This appeal followed. This Court has exclusive appellate jurisdiction. *Mo. Const. art. V, sec. 3*.

## II. STANDARD OF REVIEW

"A judgment sustaining a motion to dismiss for failure to state a claim upon which relief can be granted is reviewed de novo." *Smith, 519 S.W.3d at 797*.

> A motion to dismiss for failure to state a claim on which relief can be granted is solely a test of the adequacy of the petition. When considering whether a petition fails to state a claim upon which relief can be granted, this Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader. The Court does not weigh the factual allegations to determine whether they are credible or persuasive. Instead, this Court reviews the petition to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*Bromwell v. Nixon, 361 S.W.3d 393, 398 (Mo. banc 2012)* (internal citations and quotation marks omitted).

## III. MS. DOE FAILED ADEQUATELY TO ALLEGE AN ESTABLISHMENT CLAUSE VIOLATION

Ms. Doe's second amended petition alleged a violation of the Establishment Clause of the First Amendment of the United States Constitution. "The First Amendment, which has been made applicable to the states by incorporation into the

6

Fourteenth Amendment, provides that Congress shall make no law respecting an establishment of religion ….” *Oliver v. State Tax Comm'n*, 37 S.W.3d 243, 248 (Mo. banc 2001) (footnote omitted) (internal quotation marks omitted).

Ms. Doe alleges by offering her a booklet containing what she refers to as legislative findings constituting the “Missouri tenet,” Missouri is violating her religious beliefs by forcing her to read the contrary religious belief contained in the booklet. But the informed consent law does not purport to make any sort of legislative findings. It simply requires the noted statements be included in a booklet offered to a woman seeking an abortion. *§ 188.027.*

Legislative findings as to those statements are contained in the preamble to section 1.205, but Ms. Doe does not attack the constitutional validity of the latter statute. This may be because, in *Webster v. Reprod. Health Servs.*, *492 U.S. 490, 506-07 (1989)*, the United States Supreme Court rejected as premature a similar claim challenging the “Missouri tenet” as contained in the preamble to section 1.205 because Missouri had not yet applied the tenet in a way that would allow the Supreme Court to determine whether it expressed a value judgment or instead reflected a religious purpose to unduly restrict access to lawful abortions. *Id.*

> For this reason, the Supreme Court concluded:
>
> It will be time enough for federal courts to address the meaning of the preamble should it be applied to restrict the activities of appellees in some concrete way. Until then, this Court is not empowered to decide ... abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.

*Id.* (internal citation and quotations omitted).

The principles set out in *Webster* are determinative here as well. Ms. Doe, like the plaintiff in *Webster,* has made no attempt to show the basis for the findings in section 1.205.1 are religious. Indeed, she has not even challenged section 1.205.1 itself. She challenges instead the requirement in section 188.027.1 that a booklet repeat the legislative findings contained in section 1.205.1. She offers no explanation how such a repetition of language in a statute not alleged to be unconstitutional itself can constitute an establishment of religion. Her other Establishment Clause allegations are equally empty. For these reasons, Ms. Doe failed to state an Establishment Clause claim.[3]

## IV.    MS. DOE FAILED TO ALLEGE A VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT

Ms. Doe's second amended petition likewise fails to allege a violation of the RFRA. She alleged the informed consent law required her to have and pay for an ultrasound and to read the booklet containing the "Missouri tenet." Such requirements, she alleged, as well as the 72-hour waiting period, "restricted [her] free exercise of religion" under RFRA. She is incorrect.

RFRA provides:

1. A governmental authority may not restrict a person's free exercise of religion, unless:

---

[3] Ms. Doe's second amended petition also alleged a violation of the Free Exercise Clause of the First Amendment of the United States Constitution. Ms. Doe, however, failed to include this argument in her opening brief, and therefore, it is not considered further. *See, e.g., Newsome v. Kan. City, Mo. Sch. Dist., 520 S.W.3d 769, 777 n.8 (Mo. banc 2017)*; *Berry v. State, 908 S.W.2d 682, 684 (Mo. banc 1995)*.

(1) The restriction is in the form of a rule of general applicability, and does not discriminate against religion, or among religions; and

(2) The governmental authority demonstrates that application of the restriction to the person is essential to further a compelling governmental interest, and is not unduly restrictive considering the relevant circumstances.

2. As used in this section, **"exercise of religion"** shall be defined as an act or refusal to act that is substantially motivated by religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief.

3. As used in this section **"demonstrates"** means meets the burden of going forward with the evidence and of persuasion.

*§ 1.302.1, RSMo Supp. 2013* (emphasis in original). To violate RFRA, the informed consent law must restrict Ms. Doe's exercise of her religion.

This Court need not determine whether requiring Ms. Doe to have an ultrasound, to listen to the fetal heartbeat, or to read the booklet offered by Planned Parenthood would have constituted a restriction on her religious freedom, for the statute imposes no such requirements. Nothing in the informed consent law requires a woman seeking an abortion to have an ultrasound, much less to pay for the ultrasound or to listen to the fetal heartbeat. The informed consent law solely requires an abortion provider or another qualified professional to *present* a woman seeking an abortion with the *opportunity* to have or to view *an* ultrasound and, if she chooses to have one, an *opportunity* to listen to the heartbeat. Ms. Doe and any other woman is free to decline both opportunities.

Similarly, the informed consent law does not require a woman to pay for an ultrasound even were she to make the choice to have one; to the contrary, it requires she be provided with a list of "health care providers, facilities, and clinics that perform

9

ultrasounds, including those that offer ultrasound services free of charge." *§ 188.027.1(4).*

Neither does the informed consent law require a woman seeking an abortion to read the booklet containing the objected-to "Missouri tenet," much less to agree with it. The law requires only that the "physician who is to perform or induce the abortion or a qualified professional" offer her the *opportunity* to read the booklet in question. *§ 188.027.1(2).* Ms. Doe and any other woman is free to turn down the offer. She had no need to expose herself to, much less read, the "Missouri tenet" or other information in the booklet. Here, in fact, Ms. Doe said she already had read the booklet, making the offer itself irrelevant. Ms. Doe failed to show a violation of her religious rights in regard to the booklet.

Ms. Doe also failed to allege how the 72-hour waiting period violates her *religious* beliefs, and she makes no claim it imposed an undue burden. While she alleges the law required her to consider the "Missouri tenet" during that waiting period, nothing in the statute so requires. Further, as noted, she did not even seek a temporary restraining order or preliminary injunction prior to the expiration of the 72 hours. Accordingly, Ms. Doe has failed to plead a "restrict[ion]" on her "free exercise of religion."

The one act the informed consent law did require of Ms. Doe before she would have access to an abortion was for her to certify Planned Parenthood had complied with the requirements of the informed consent law. *§ 188.027.3, set out in note 3, supra.* But she does not allege that certifying someone else has complied with the law would run afoul of her rights under RFRA, and no such argument would have merit.

## V. CONCLUSION

For the reasons noted, the judgment is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

Draper, Wilson, Russell and Breckenridge
JJ., concur; Fischer, C.J., concurs in separate
opinion filed; Powell, J., concurs in opinion of
Fischer., C.J.

11



# SUPREME COURT OF MISSOURI
## en banc

MARY DOE,                              )
                                       )
               Appellant,          )
                                       )
v.                                     )     No.  SC96751
                                       )
MICHAEL L. PARSON, et al.,             )
                                       )
               Respondents.        )

## CONCURRING OPINION

I concur with the principal opinion's holdings that Doe's allegations fail to plead a violation of the Establishment Clause of the First Amendment to the United States Constitution or Missouri's Religious Freedom Restoration Act (RFRA), § 1.302.1, RSMo Supp. 2003.  I write separately to emphasize that Doe's Establishment Clause claim is also categorically foreclosed by Supreme Court of the United States precedent.

Doe argues § 188.027.1(2), RSMo Supp. 2014, is an unconstitutional establishment of religion because it includes legislative findings that the "life of each human being begins at conception" and that "[a]bortion will terminate the life of a separate, unique, living human being."  Doe presumes these findings, which are essentially the same as the legislative findings in § 1.205.1, RSMo 2000, are an unconstitutional establishment of

religious belief because they coincide with some religious beliefs.[1]  The Supreme Court, however, has made it clear that state speech is not religious speech solely because it "happens to coincide" with a religious tenet.  *McGowan v. Maryland*, 366 U.S. 420, 442 (1961).  If the mere coincidence of law and religious belief violates the Establishment Clause, then innumerable, generally accepted legal proscriptions against murder, theft, and other destructive behaviors are also unconstitutional.  Of course, that is not the law because:

> the Establishment Clause does not ban . . . state regulation of conduct whose reason or effect merely happens to coincide or harmonize with the tenets of some or all religions.  In many instances, . . . state legislatures conclude that the general welfare of society, wholly apart from any religious considerations, demands such regulation.  Thus, for temporal purposes, murder is illegal.  And the fact that this agrees with the dictates of the Judaeo-Christian religions while it may disagree with others does not invalidate the regulation.  So too with the questions of adultery and polygamy.  The same could be said of theft, fraud, etc., because those offenses were also proscribed in the Decalogue.

*Id.*  (internal citations and quotation marks omitted).  Similarly, just because "the Judaeo-Christian religions oppose stealing does not mean that a State . . . may not, consistent with the Establishment Clause, enact laws prohibiting larceny."  *Harris v. McRae*, 448 U.S. 297, 319 (1980).[2]

This same general principle applies equally to the specific context of abortion regulations.  The Supreme Court has expressly recognized the Establishment Clause does

---

[1] Section 1.205.1 provides:
> The general assembly of this state finds that:
> (1) The life of each human being begins at conception;
> (2) Unborn children have protectable interests in life, health, and well-being;
> (3) The natural parents of unborn children have protectable interests in the life, health, and well-being of their unborn child.

[2]  Missouri also criminalizes the offense of perjury, which is codified in § 575.040, RSMo Supp. 2014, even though it coincides with *Exodus* 20:16, which provides, "Thou shalt not bear false witness against thy neighbor."

not limit the State's authority to express a value judgment affirming the value of human life because:

> the right in *Roe v. Wade* can be understood only by considering both the woman's interest and the nature of the State's interference with it. *Roe* did not declare an unqualified "constitutional right to an abortion ...." Rather, the right protects the woman from unduly burdensome interference with her freedom to decide whether to terminate her pregnancy. **It implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion**, and to implement that judgment by the allocation of public funds [through legislation].

*Maher v. Roe*, 432 U.S. 464, 473-74 (1977) (emphasis added). Moreover, the Supreme Court has specifically recognized the legislative finding in § 1.205.1(1) that "[t]he life of each human being begins at conception" can be "read simply to express that sort of value judgment." *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 506 (1989).

Likewise, in *Harris*, the Supreme Court rejected a challenge to the Hyde Amendment's ban on public funding of abortion under the Establishment Clause. *Id.* at 319–20. The Supreme Court explained:

> The Hyde Amendment . . . is as much a reflection of traditionalist values towards abortion, as it is an embodiment of the views of any particular religion. In sum, . . . the fact that the funding restrictions in the Hyde Amendment may coincide with the religious tenets of the Roman Catholic Church does not, without more, contravene the Establishment Clause.

*Id.* (internal citations and quotation marks omitted). Therefore, to the extent Missouri's value judgment about when human life begins "[s]imply ha[s] religious content or promot[es] a message consistent with a religious doctrine," the Supreme Court has made

3

clear it "does not run afoul of the Establishment Clause." *Van Orden v. Perry*, 545 U.S. 677, 690 (2005).[3]

Doe's Establishment Clause claim is categorically foreclosed by the directly relevant, well-established precedent of Supreme Court of the United States. Accordingly, I concur that the judgment dismissing her petition for failure to state a claim should be affirmed.

_____
Zel M. Fischer, Chief Justice

---

[3] The three-prong test of *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971), is not the exclusive framework to analyze a challenge under the Establishment Clause. "On a purely doctrinal level, the Court cannot even settle on one standard to apply in all Establishment Clause cases. At some point during the last ten years, one or more of the nine Justices have articulated ten different Establishment Clause standards." Steven G. Gey, *Reconciling the Supreme Court's Four Establishment Clauses*, 8 U. Pa. J. Const. L. 725, 725, 728–30 (2006). "While th[e *Lemon* test] is well settled, . . . it provides no more than [a] helpful signpost in dealing with Establishment Clause challenges." *Mueller v. Allen*, 463 U.S. 388, 394 (1983) (citation omitted) (internal quotation marks omitted).