James J. STALCUP, Plaintiff/Respondent,

v.

ORTHOTIC & PROSTHETIC LAB, INC., Defendant/Appellant.

No. 74525.

Missouri Court of Appeals, Eastern District, Division Four.

April 6, 1999.

---

James P. Lemonds, G.N. Beckemeier, Jr., St. Louis, Robert S. Sanderson, South Bend, IN, for appellant.

Richard J. Burke, Wood River, IL, for respondent.

RHODES RUSSELL, Judge.

Orthotic & Prosthetic Lab, Inc. ("Lab"), appeals from a judgment on a jury verdict awarding James Stalcup ("plaintiff") compensatory damages for his injuries as a result of Lab's negligence in fitting him for a prosthetic leg. Lab maintains 1) plaintiff failed to make a submissible case of negligence; 2) plaintiff's verdict-directing instruction granted the jury a roving commission; 3) plaintiff's negligence claim against Lab was barred by the two-year statute of limitations in section 516.105 RSMo 1994 [1] for actions against health care providers; and 4) plaintiff's damages instruction and verdict form were improper as Lab is a health care provider and entitled to a specific instruction and verdict form including an itemization of damages. We find no error and affirm.

In September 1991, plaintiff's left leg was amputated below the knee. Between 1991 and 1994, Lab fitted and manufactured prosthetic limbs for plaintiff. The majority of the services provided by Lab were through Lab's employee, Marcia Klunk, a certified prosthetist. These services included fitting plaintiff with his prosthetic leg, educating him about use of the limb, and diagnosing problems he had with the leg. In October 1992, as plaintiff was walking up his driveway, the prosthetic leg detached, and plaintiff fell suffering severe injuries. Plaintiff continued working with Klunk and Lab through the fall of 1994.

Plaintiff filed his petition in October 1996 against Lab alleging negligence and product defects, and claiming damages arising from the October 1992 fall and another fall he stated occurred in October 1994. At the close of plaintiff's evidence, Lab moved for a directed verdict on all counts. The trial court granted the verdict as to the product defects claims, but denied it as to the negligence claims. At the close of all the evidence, plaintiff dismissed his claim arising out of the second fall. Lab renewed its motion for directed verdict on the sole remaining count of negligence, which the trial court denied. The jury returned a verdict in plaintiff's favor for $120,000, and the trial

---

1. All statutory references hereinafter are to RSMo 1994 unless otherwise indicated.

court entered a judgment thereon. Lab appeals.

Lab's first point on appeal asserts the trial court erred in denying its motion for directed verdict because plaintiff failed to make a submissible case of professional negligence in that plaintiff's expert witness failed to identify any specific act or omission by Lab that caused the improper fit.

■ In determining whether plaintiff made a submissible case, we must consider the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff, disregarding all evidence contrary to his claim. *Cline v. William H. Friedman & Associates, Inc.*, 882 S.W.2d 754, 758 (Mo. App.1994). If it may be fairly inferred that defendant was negligent, the evidence was sufficient. *Id.* However, if the jury can only determine the question of negligence by resorting to conjecture and surmise, plaintiff has failed to make a submissible case. *Mills v. Redington*, 736 S.W.2d 522, 524 (Mo.App. 1987).

■ Both parties treated the case as involving professional negligence wherein a defendant is required to use that degree of skill and care ordinarily used under the same or similar circumstances by members of his or her profession. Expert testimony is required to establish professional negligence where the issues in the case involve matters outside the common experience and knowledge of laypersons. *Annen v. Trump*, 913 S.W.2d 16, 20 (Mo.App.1995).

Plaintiff, therefore, bore the burden at trial to introduce expert testimony to prove Lab failed to exercise the degree of skill and care ordinarily used under the same or similar circumstances by members of its profession. *Cline*, 882 S.W.2d at 758. Lab argues plaintiff failed to offer evidence that it breached the standard of care because plaintiff's expert's opinion was based solely on an adverse result.

■ In a professional negligence action, a presumption of negligence based solely on an adverse result is not permitted. *Id.* at 759. However, an adverse result is a fact which may be considered, provided it does not constitute the complete basis for the expert opinion. *Id.*

Plaintiff offered the testimony of Mark Edwards, Director of Northwestern University's Prosthetic & Orthotic Center, to establish Lab's deviation from the standard of care. Edwards testified he was a certified prosthetist, was familiar with Klunk, and had reviewed Lab's records regarding plaintiff. He described the steps involved in fitting a patient with a prosthesis and stated that in plaintiff's case it didn't appear those steps were taken. He testified the number of prostheses plaintiff was fitted with, approximately ten, indicated Lab was "not doing it correctly."

Edwards stated that although he couldn't identify a particular act by Klunk that caused the prosthesis not to fit, "[t]here was a series of things that made it self-evident that the prosthesis wasn't fitting correctly, due to whatever reason, whether it be the casting, the modification, the method of fitting the patient. And in the end, the prosthesis wasn't fitting, and it fell off." He testified it was his opinion that the procedures employed by Klunk and Lab fell below the skill level employed by certified prosthetists.

Lab contends plaintiff failed to make a submissible case because Edwards' testimony was based solely on an adverse result: the improper fit. Lab asserts plaintiff was required to identify a specific act or omission by Lab which caused the improper fit.

Lab's position misrepresents Edwards' testimony. Plaintiff did not present the speculative proposition that Lab was negligent because the leg fit improperly on the day of the first fall. Edwards testified that Lab's procedures fell "below the level of skill employed by certified prosthetists." He stated that he relied on a number of things in reaching this conclusion including the high number of prosthetic legs with which plaintiff was fitted unsuccessfully. Edwards "identified a number of things through the history of this fitting that [were] improper and below the level of skill normally utilized or performed by an experienced prosthetist." He specifically noted Lab's inability to fit the prosthesis comfortably, the inability of the prosthesis

to be held on properly, and problems with pressure sores.

In *Cline*, this court was faced with a similar challenge to the submissibility of the plaintiff's medical malpractice claim. The defendant doctor argued plaintiff failed to prove he negligently performed the plaintiff's surgery because the plaintiff's expert relied solely on the surgery's adverse result, that plaintiff could not close her eyes, in reaching his conclusions. We explained the expert witness did not rely solely on the bad result, but testified the defendant doctor removed too much tissue from the plaintiff's upper eyelids. The expert therein also stated his opinion was based upon medical publications, the treating physicians' records, and his own examination of the plaintiff. The plaintiff had, therefore, made a submissible case. *Cline*, 882 S.W.2d at 758–59.

Likewise, Edwards' opinion herein was based not solely on the leg's improper fit, but also on his experience with prosthetics and his examination of Lab's records of treating plaintiff. At trial, plaintiff's attorney walked Edwards through a step-by-step history of Lab's treatment of plaintiff. He noted multiple factors leading to his conclusion that Lab deviated from the accepted standard of care.

Lab contends plaintiff's prosthesis might not have fit properly due to plaintiff's own physiological changes. Lab had the opportunity to present this theory at trial and to cross-examine plaintiff's expert thereon. Edwards testified, however, that Lab's measurements of plaintiff's stump did not indicate physiological changes that would cause the difficulty in fitting.

Considered in a light most favorable to plaintiff, the evidence of Lab's negligence was sufficient to establish a submissible case of professional negligence. Point one is denied.

In its second point, Lab contends the trial court erred in giving the verdict-directing instruction, Instruction No. 6. Lab avers the instruction granted the jury a roving commission in that it did not specify a particular act or omission by Lab which caused the improper fit.

Instruction No. 6 read as follows:

Your verdict must be for plaintiff if you believe:

First, defendant failed to fit plaintiff with a prosthetic limb that would remain attached, and

Second, the defendant was thereby negligent, and

Third, as a direct result of such negligence, plaintiff sustained damage.

■■■ Use of Missouri Approved Instructions is mandatory in any case where the instructions apply. Rule 70.02(b); *Smith v. Kovac*, 927 S.W.2d 493, 497 (Mo.App.1996). Rule 70, however, recognizes that approved instructions may not be appropriate to every factual situation. Therefore, Rule 70.02(b) provides for modifying an existing MAI or drafting of a not-in-MAI instruction. *Id.* Rule 70.02(b) states where instructions not in MAI must be given, then "such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." A not-in-MAI instruction is reviewed to determine whether the jury could understand the instruction, and whether the instruction followed applicable substantive law by submitting the ultimate facts required to sustain a verdict. *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 462 (Mo. banc 1998).

■■■ "There are no 'precise, universally applicable definitions which explicitly differentiate evidentiary facts from ultimate facts.'" *Duncan v. First State Bank of Joplin*, 848 S.W.2d 566, 569 (Mo.App.1993) (quoting *L.S. Douglas v. Hoeh*, 595 S.W.2d 434, 438 (Mo.App.1980)). Courts must determine, therefore, what the ultimate facts are on a case-by-case basis. *Duncan*, 848 S.W.2d at 569. This determination involves analysis of the specific theory relied on by the party offering the instruction. *Id.*; *Grindstaff v. Tygett*, 655 S.W.2d 70, 73 (Mo.App.1983).

Plaintiff's theory of negligence was that Lab supplied plaintiff with a prosthetic leg which did not fit properly and consequently detached. The instruction did submit to the jury plaintiff's theory of why Lab's services were negligent, namely that the prosthesis did not fit.

Lab claims plaintiff was required to "specify a particular act or omission on the part of the Lab which caused [his] prosthetic leg to not fit properly."

■ In reviewing jury instructions, jurors should be credited with ordinary intelligence, common sense, and an average understanding of the English language. *Kovac,* 927 S.W.2d at 498. In *Kampe v. Colom,*[2] the Western District considered a parallel argument. The jury was to find for the plaintiff if it believed the defendant doctor "failed to monitor the medications he prescribed for [the plaintiff]." *Kampe,* 906 S.W.2d at 803. The court determined the instruction sufficiently submitted the ultimate facts which defined for the jury the plaintiff's specific theory of negligence. The court reasoned the word "monitor" was not a scientific word that required expert testimony to define for the jury, and did not compel the jury to employ expertise that it lacked. To a reasonable person, the court explained, the word "monitor," as applied to the evidence in the case, asked whether the defendant observed, oversaw, supervised, or regulated the plaintiff's use of the prescribed medications. *Id.* at 804–05.

Likewise, the words "fit" and "would remain attached" are not ambiguous or confusing and do not compel the jury to employ expertise that it lacks. The words are not infrequently used, and in the context of their use, have no scientific meaning that require a definition for the jury. To a reasonable juror, the words "failed to fit plaintiff with a prosthetic limb that would remain attached" when applied to the evidence in this case, asked whether defendant provided a prosthesis which would hold to plaintiff's stump during ambulation.

■ Lab next asserts the instruction effectively changed the cause of action from negligence to strict liability. Lab maintains that under plaintiff's instruction, the jury's analysis is reduced to the following: "If the leg fell off, it must not have fit. If it did not fit, the prosthetist must have acted negligently."

This argument ignores the second subparagraph of Instruction No. 6 that the jury must find also "that defendant was thereby negligent." The clear language of the instruction required the jury to find that Lab provided plaintiff with a prosthesis that detached, and was thereby negligent, and plaintiff sustained damages thereby.

■ The test of correctness of an instruction is how the instruction will naturally be understood by the average juror. *Kovac,* 927 S.W.2d at 498. The average juror would naturally understand that not only must the jury find that the leg would detach, but also that the provision by Lab of such a prosthesis constituted negligence. The interpretation offered by Lab is not reasonable and would require the jury to ignore the clear language of the instruction. In the absence of exceptional circumstances, appellate courts assume that a jury obeys a trial court's directions and follows its instructions. *Id.*

We find that plaintiff's theory was supported by the evidence, and Instruction No. 6 submitted the ultimate facts which defined for the jury plaintiff's specific theory of negligence. Therefore, the instruction did not grant the jury a roving commission. Point denied.

■ In its third point, Lab argues the trial court erred in determining that the two-year statute of limitations for actions against health care providers in section 516.105 did not bar plaintiff's claim.

Section 516.105 provides, in pertinent part:

All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health care services ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of.

Lab avers that it is an entity providing health care services and is therefore entitled to the protection of this section. We dis-

---

**2.** 906 S.W.2d 796 (Mo.App.1995).

agree that the services provided by Lab are "health care services" as provided by section 516.105.

 The terms "health care" or "health care services" are not defined in chapter 516. Thus, we must consider standard canons of statutory construction in determining whether Lab falls within the scope of these terms. *Columbia Athletic Club v. Director of Revenue,* 961 S.W.2d 806, 809 (Mo. banc 1998). The purpose of statutory construction is to ascertain the intent of the legislature. *Id.* Absent a statutory definition, the words used in the statute will be given their plain and ordinary meaning as derived from the dictionary. *Id.*

Although Lab argues that the provision of prosthetic devices involves complex processes well beyond the mere provision of a synthetic limb, and, therefore, is a service, it does not restore soundness of the body or mind, and does not affect the presence or likelihood of disease. Lab's services do not affect the patient's health as defined by the statute; they merely aid in ambulation. Further, each of the groups specifically identified in section 516.105, including physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, and physical therapists, is a provider that directly affects the condition of the patient's body or mind.

"Health care" is generally defined as "any field or enterprise concerned with supplying services, equipment, information, etc., for the maintenance or restoration of health." Webster's College Dictionary, 2d ed., p. 599 (1997). "Health," in turn, is "soundness of body or mind; freedom from disease or ailment." *Id.* We conclude that the plain and ordinary meaning of "health care" is a service which maintains or restores the soundness of the human body or mind, or aids to free the body or mind from disease or ailment.

"Health care provider" is defined elsewhere, in chapter 538.[3] Section 538.205(4) defines "health care provider" as "any physi-

cian, hospital, health maintenance organization, ambulatory surgical center, long-term care facility, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, *and any other person or entity that provides health care services under the authority of a license or certificate.*" (Emphasis added.)

Lab does not provide its services under the authority of a license or certificate as contemplated by chapter 538. The fitting and manufacturing of orthotic and prosthetic devices is not a regulated profession in our state. Lab is not licensed by the state or federal governments while the "health care providers" enumerated in section 538.205(4) are professions regulated by our state. We find that under chapter 538, Lab is not a health care provider.

In that Lab is not an entity providing health care services, section 516.105's statute of limitations does not apply to plaintiff's cause of action against it. Point three is denied.

 Lab's final point on appeal avers the trial court erred in giving Instruction No. 7. Lab maintains the trial court should have given, in lieu of Instruction No. 7, MAI 21.03 and MAI verdict form 36.20 which require the jury to itemize the plaintiff's damages.

The Committee Comment to MAI 21.03 explains the instruction and accompanying verdict forms "are applicable only to causes of action against health care providers ... subject to the provisions of sections 538.205 through 538.230, RSMo." As we have found herein that Lab is not a health care provider under chapter 538, this cause of action is not subject to the provisions of sections 538.205 et. seq., and, thus, MAI 21.03 and verdict form 36.20 are not applicable.

Lab contends it does qualify as a "health care provider" under section 538.205(4) because it is certified by the American Board for Certification in Orthotics and Prosthetics. Lab argues the "authority" contemplated by the statute does not require licensing or cer-

---

**3.** Chapter 538 was enacted in 1986 to protect health care providers from meritless and frivolous suits for negligence and damages. *Mulligan*

*v. Truman Medical Center,* 950 S.W.2d 576 (Mo. App.1997).

tification by a governmental body. Based on the government regulation of all of the groups specifically enumerated in the statute, however, we conclude that government regulation is the "authority" the statute contemplates.

Point four is denied. The judgment is affirmed.

MARY K. HOFF, P.J., and GARY M. GAERTNER, J., concur.

1. All statutory references are to RSMo 1994.

