Ella PAYNE, Appellant,

v.

Bob MUDD, et al, Respondents.

No. ED 83105.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 3, 2004.

Samuel A. Mormino, Jr., Wiseman, Hesi, Mormino, Hubbs, Velloff, Edmonds & Snider, P.C., Alton, IL, for Appellant.

Daniel E. Wilke, St. Louis, MO, for Respondent.

MARY K. HOFF, Judge.

Ella Payne (Payne) appeals from the trial court's judgment dismissing her personal injury claim against Bob Mudd (Mudd) and Southwestern Hearing Aid Company, Inc. (Southwestern). We affirm.

Payne filed her petition on December 23, 2002, alleging that she visited the offices of Southwestern for the purpose of being fitted for hearing aids on December 3, 1998. Payne further alleged as follows: Southwestern, by and through its agent Mudd, inserted or injected a material into Payne's left ear canal for the purpose of creating a mold. Southwestern failed to remove the material and punctured Payne's left ear drum. As a result, Payne suffered severe and permanent injuries to her ear and hearing.

Mudd and Southwestern moved to dismiss Payne's claim as barred by the two-year statute of limitations contained in Section 516.105 RSMo 2000.[1] The trial court found that the services being rendered to Payne at the time of her alleged injury constituted health care services by a health care provider which made Section 516.150 applicable. The trial court sustained the motion to dismiss and dismissed Payne's petition with prejudice. This appeal follows.

In her sole point on appeal, Payne argues the trial court erred in dismissing her claim as barred by Section 516.105's two-year statute of limitations because the five-year statute of limitations contained in Section 516.120 applied to her claim that

her injuries occurred while Mudd and Southwestern were creating a mold for a hearing device.

When reviewing a dismissal of cause of action, we examine the pleadings, treating all alleged facts as true and construing the allegations favorable to the pleader. *Armistead v. A.L.W. Group,* 60 S.W.3d 25, 26 (Mo.App. E.D.2001). The motion to dismiss will be sustained if it clearly appears on the face of the petition that the claim is barred by the applicable statute of limitations. *Id.*

The statute of limitations contained in Section 516.105 pertains to actions against health care providers for medical malpractice. It provides, in pertinent part:

> All actions against physicians, hospitals, dentists, registered or licensed practical nurses, optometrists, podiatrists, pharmacists, chiropractors, professional physical therapists, and any other entity providing health care services and all employees of any of the foregoing acting in the course and scope of their employment, for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of . . . .

Section 516.105. Thus, the question before us is whether Payne's petition for damages for malpractice, negligence or mistake related to health care alleged a cause of action against an entity and its employee providing health care services.

In making its decision, the trial court relied on *Blais v. New England Center for Hearing Rehabilitation, LLC,* 2003 Conn.Super. LEXIS 661, 2003 WL 1487743 (Conn.Super.Ct. Mar. 13, 2003), an unpublished opinion of the Superior Court

1. Unless otherwise specified, all subsequent statutory references are to RSMo 2000.

of Connecticut which held that a defendant fitting a child for a hearing aid was a health care provider and that the plaintiff's action constituted a medical malpractice claim for which a "good faith certificate" was required. *Id.* at \*\*7–11, at \*1–2. The trial court then considered Chapter 538's definition of health care services for further instruction. Section 538.205.5, which pertains to tort actions based on improper health care, defines health care services as:

> any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution, in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession or in the furtherance of the purposes for which an institutional health care provider is organized.

Concluding that fitting for hearing instruments constituted health care services by a health care provider as defined by Section 538.205, the trial court held Payne's petition was not timely filed under Section 516.120.

Although unpublished decisions of the courts of other states are not persuasive authority in this Court, we find Blais' analysis helpful when combined with our own Court's analysis in *Stalcup v. Orthotic & Prosthetic Lab, Inc.,* 989 S.W.2d 654 (Mo. App. E.D.1999).

In *Stalcup,* the plaintiff's left leg was amputated below the knee. *Id.* at 656. Over the course of three years, Orthotic & Prosthetic Lab, Inc. (Lab), primarily through its employee, a certified prosthetist, fitted and manufactured prosthetic limbs for Stalcup. *Id.* Subsequently, as Stalcup was walking up his driveway, his prosthetic leg detached, and he fell, sustaining severe injuries. *Id.* On appeal, Lab argued the trial court erred in determining that Section 516.105 did not bar Stalcup's claim and averred that Lab was an entity providing health care services. *Id.* at 659. This Court disagreed that the services Lab provided were "health care services" as provided by Section 516.105. *Id.* at 659–60. Noting that the terms "health care" or "health care services" were not defined in Chapter 516, this Court concluded that the plain and ordinary meaning of "health care" is a service which maintains or restores the soundness of the human body or mind, or aids to free the body or mind from disease or ailment. *Id.* at 660.

This Court then looked to Section 538.205.4 for a definition of "health care provider." *Id.* Section 538.205.4 defines this term as "any physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, *and any other person or entity that provides health care services under the authority of a license or certificate.*" (Emphasis added). Applying this definition to Lab, this Court found it significant that Lab did not provide its services under the authority of a license or certificate, and that the fitting and manufacturing of orthotic and prosthetic devices was not a regulated profession in Missouri. *Id.* Thus, this Court concluded that Lab was not a health care provider under Chapter 538. This Court further determined that Lab's services did not restore soundness of the body or mind and did not affect the presence or likelihood of disease. *Id.*

Applying the *Stalcup* and *Blais* analyses to the facts before us, we must conclude that the services described in Payne's petition are "health care services" as contemplated by Section 516.105. Unlike fitters of prosthetics, hearing instrument specialists such as Mudd are licensed by Missouri, and the practice of fitting hearing instruments is a regulated profession in Missouri. Section 346.010.6 defines a "hearing instrument specialist" as "a person licensed by the state pursuant to 346.010 to 346.250 who is authorized to engage in the practice of fitting hearing instruments." Section 346.010.11 then defines the "practice of fitting hearing instruments" as: "the selection, adaptation, and sale of hearing instruments, including the testing and evaluation of hearing by means of an audiometer and *the making of impressions for earmolds.*" (Emphasis added.)

Thus, Mudd is a health care provider as defined by Section 538.205.4 and, under Section 538.205.5, creating an earmold is a service rendered to a patient in the ordinary course of Mudd's profession. Because Payne's claim for damages alleged that Southwestern, by and through its agent Mudd, acted negligently, we conclude Payne's claim against Mudd and Southwestern is barred by the two-year statute of limitations contained in Section 516.105. Point denied.

The judgment of the trial court dismissing Payne's petition as barred by Section 516.105 is affirmed.

GLENN A. NORTON, P.J. and KATHIANNE KNAUP CRANE, J.: Concur.