STATE of Missouri ex rel. RED CROSS PHARMACY, INC., Relator,

v.

The Honorable Larry D. HARMAN, Judge of the Circuit Court of Clay County at Liberty, Respondent.

No. WD 76777.

Missouri Court of Appeals, Western District.

Dec. 24, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 2014.

Application for Transfer Denied March 25, 2014.

Bradley C. Nielsen, Kansas City, MO, for Relator, for appellant.

Eddie G. Dougherty and B.K. Christopher, Kansas City, MO and Dean C. Nichols, St. Louis, MO, for respondent.

Before Writ Division: ALOK AHUJA, P.J., and VICTOR C. HOWARD and CYNTHIA L. MARTIN, JJ.

ALOK AHUJA, Judge.

Relator Red Cross Pharmacy, Inc. seeks a writ of mandamus ordering the Respondent, Judge Larry D. Harman, to dismiss without prejudice the claim asserted against the Pharmacy in the underlying action pending in the circuit court. The Pharmacy argues that dismissal is required because the plaintiff in the underlying case failed to file a timely and sufficient health-care affidavit with respect to the Pharmacy's alleged negligence, as required by § 538.225.1.[1] We agree, and now make our preliminary writ of mandamus absolute.

---

1. Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as updated through the 2012 Cumulative Supplement.

## Factual Background

The Pharmacy's petition for writ of mandamus relates to a civil action pending in Division Four of the Circuit Court of Clay County, *Amy Honeycutt v. Scott Talpers, M.D., et al.,* No. 12CY–CV06503 (the "Underlying Action"). In the Underlying Action plaintiff Amy Honeycutt alleges claims against various persons and entities for personal injuries she suffered as a result of the administration to her of isoniazid ("INH") and pyridoxine, in response to her positive test findings for latent tuberculosis infection. Honeycutt alleges that she experienced multiple, serious side effects from the medications administered to her, and was ultimately required to undergo a liver transplant as a result.

On December 21, 2012, Honeycutt filed a First Amended Petition in the Underlying Action, which asserts a negligence claim against the Pharmacy. The First Amended Petition alleges that the Pharmacy "is a Missouri corporation dispensing drugs and medications in the state of Missouri and specifically to the Clay County Public Health Center in Liberty," where Honeycutt was treated. The Petition alleges that the Pharmacy provided the isoniazid and pyridoxine administered to Honeycutt. The Petition contends that the Pharmacy acted negligently in providing these medications; in particular, it alleges:

At all times herein mentioned, Defendant Red Cross Pharmacy, Inc., its agents and employees, failed to use that degree of care tha[t] an ordinary careful and prudent person would use under the same o[r] similar circulations and therefore was negligent in the following respects, to wit:

a) In providing oral medication of isoniazid (INH) to the Clay County Public Health Center, its agents and employees, without documentation on the ap-propriate administration of such medication;

b) In failing to warn and/or instruct Clay County Public Health Center, its agents and employees, concerning dangers associated with administration of the oral medication of isoniazid (INH);

c) In failing to warn and/or instruct Defendant Clay County Public Health Center, its agents and employees, of symptoms to a patient caused by a reaction to oral isoniazid (INH);

d) In failing to provide any warning or instruction to Plaintiff concerning dangers of isoniazid (INH), instructions on proper administration or symptoms manifesting an adverse reaction to such medication.

Missouri law requires that, if a plaintiff asserts a personal-injury claim relating to the provision of health-care services, the plaintiff must file an affidavit indicating that the claim is supported by the opinion of a qualified expert. In particular, § 538.225.1 provides that

[i]n any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

On February 13, 2013, Honeycutt's counsel filed an affidavit with the court, indicating that he had obtained the written opinion of Marcus Iszard, Ph.D., that the

Pharmacy's dispensing of the medications administered to Honeycutt violated the standard of care. Dr. Iszard is a pharmacologist and toxicologist, and has never practiced, or been licensed, as a pharmacist.

On June 12, 2013, the Pharmacy filed a motion for *in camera* inspection of the health-care affidavit and supporting opinion, and for dismissal of Honeycutt's claim against it based upon her non-compliance with § 538.225.1. Honeycutt responded that a health-care affidavit was not required because the Pharmacy did not qualify as a "health care provider," and had not provided "health care services" to Honeycutt, within the meaning of § 538.225.1.

Despite her contention that § 538.225.1 did not apply to her claims against the Pharmacy, Honeycutt submitted the original report of Dr. Iszard for inspection on July 9, 2013. At the same time, Honeycutt's counsel also submitted a supplemental health-care affidavit which stated that Rodney Richmond, a registered pharmacist, had opined that the Pharmacy had violated the standard of care. The Pharmacy filed a motion to strike the supplemental health-care affidavit because it was filed more than 180 days after the filing of the First Amended Petition, in violation of § 538.225.5.

On August 15, 2013, the trial court denied the Pharmacy's motion to dismiss, and its motion to strike the supplemental health-care affidavit. A docket entry memorializing the court's ruling states:

> Court has conducted the *in camera* inspection of health-care affidavit. The affidavit of Marcus Iszard, PhD is deemed insufficient to comply with § 538 RSMo. Plaintiff has, however, filed an affidavit of a licensed pharmacist, Rodney Richard [*sic*], in support of her claim which is deemed sufficient for

her claim to proceed against defendant Red Cross Pharmacy, Inc.

The Pharmacy filed its Petition for Writ of Mandamus in this Court on August 26, 2013. The Pharmacy's petition asks this Court to issue a writ compelling the circuit court to strike Honeycutt's supplemental health-care affidavit, and dismiss her claims against the Pharmacy without prejudice based on her failure to timely comply with § 538.225.1. We issued a preliminary writ on September 16, 2013, and ordered briefing and oral argument.

### Analysis

Red Cross argues that it is entitled to an order compelling the trial court to dismiss Honeycutt's claim because she failed to file a timely and sufficient health-care affidavit as required by § 538.225.1. We agree.

"A writ of mandamus is appropriate where it is necessary to prevent great injury or injustice. A party seeking the writ must allege and prove that it had an unequivocal, clear, specific right to the thing claimed." *State ex rel. Farley v. Jamison*, 346 S.W.3d 397, 399 (Mo.App. E.D.2011) (citations omitted). Mandamus is appropriate where a trial court has failed to dismiss an action without prejudice, despite the plaintiff's failure to file a timely and sufficient health-care affidavit as required by § 538.225. *Id.*

As noted above, § 538.225.1 requires that, in any damages action against a "health care provider" arising out of the rendering or failure to render "health care services," the plaintiff must file an affidavit stating that he or she has obtained a written opinion from a "legally qualified health care provider" that the defendant was negligent, and that the defendant's negligence caused the plaintiff's damages. The statute defines a "legally qualified health care provider" as "a health care provider licensed in this state or any other state in

the same profession as the defendant and either actively practicing or within five years of retirement from actively practicing substantially the same specialty as the defendant." § 538.225.2. The required affidavit must be filed "no later than ninety days after the filing of the petition," unless the court, "for good cause shown," extends the filing deadline for no more than 90 additional days. § 538.225.5. If the plaintiff fails to file a timely, compliant affidavit, "the court shall, upon motion of any party, dismiss the action against such moving party without prejudice." § 538.225.6.

Honeycutt[2] concedes that her first affidavit, which was filed within 90 days of the filing of her First Amended Petition, did not comply with § 538.225, because Dr. Iszard does not qualify as a "legally qualified health care provider" because he has never been licensed, or practiced, as a pharmacist. Honeycutt also admits that her supplemental health-care affidavit, which referred to the opinions of registered pharmacist Rodney Richmond, was filed more than 180 days after the filing of her First Amended Petition. Honeycutt concedes that, if § 538.225.1 applies to her claim against the Pharmacy, the trial court would have been required to strike her supplemental affidavit, and dismiss her claim against the Pharmacy without prejudice. *See State ex rel. Farley*, 346 S.W.3d at 400 (ordering trial court to dismiss claim without prejudice where plaintiff attempted to cure deficiencies in health-care affidavit by filing a supplemental affidavit more than 180 days after the filing of her medical malpractice claims).

Honeycutt argues, however, that § 538.225. 1's affidavit requirement is not applicable here, because the Pharmacy does not qualify as a "health care provider," and because it did not provide "health care services" to Honeycutt on the facts of this case. We disagree.

1. The statutory definition of a "health care provider" is broad enough to include the Pharmacy. The definition provides that "health care provider" means

any physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility including those licensed under chapter 198, dentist, registered or licensed practical nurse, optometrist, podiatrist, *pharmacist,* chiropractor, professional physical therapist, psychologist, physician-in-training, *and any other person or entity that provides health care services under the authority of a license or certificate.*

§ 538.205(4) (emphasis added).

Honeycutt argues that the Pharmacy does not qualify as a "health care provider" under this definition, because the statute refers to *pharmacists,* but does not explicitly refer to *pharmacies.* Honeycutt ignores, however, that in addition to listing a number of specific categories of "health care providers," the definition of a "health care provider" also includes "any other person or entity that provides health care services under the authority of a license or certificate." *Id.* A "health care service" "is a service which maintains or restores the soundness of the human body or mind, or aids to free the body or mind from disease or ailment." *Stalcup v. Orthotic & Prosthetic Lab, Inc.,* 989 S.W.2d 654, 660 (Mo.App. E.D.1999). We have previously relied on the "catch-all" language of § 538.205(4) to hold that licensed

---

**2.** Although Judge Harman is nominally the Respondent in this proceeding, Honeycutt's counsel submitted the Respondent's Brief and argued the case on Respondent's behalf. In this opinion we accordingly refer to Honeycutt as the party defending the trial court's order.

persons or entities providing health-care services constituted "health care providers," even though they were not specifically listed in the statute. *See Payne v. Mudd*, 126 S.W.3d 787, 790 (Mo.App. E.D. 2004) (concluding that a "hearing instrument specialist" constituted a "health care provider" under § 538.205(4), because "hearing instrument specialists ... are licensed by Missouri, and the practice of fitting hearing instruments is a regulated profession in Missouri"); *compare Stalcup*, 989 S.W.2d at 656–60 (because prosthetic device fitting is not regulated under a license or certificate in the state of Missouri, the defendant did not qualify as a "health care provider" under the provisions of Chapter 538).

Pharmacies "provide[ ] health care services under the authority of a license or certificate," § 538.205(4), and therefore constitute "health care providers" within the statutory definition. Section 338.210.1 defines a pharmacy as "any location where the practice of pharmacy occurs or such activities are offered or provided by a pharmacist or another acting under the supervision and authority of a pharmacist." Section 338.220.1 specifies that "[i]t shall be unlawful for any person ... [or] business entity to open, establish, operate, or maintain any pharmacy as defined by statute without first obtaining a permit or license to do so from the Missouri board of pharmacy." The "practice of pharmacy"—the activity which occurs in licensed pharmacies—is defined by § 338.010.1 to mean in relevant part:

> the interpretation, implementation, and evaluation of medical prescription orders ...; receipt, transmission, or handling of such orders or facilitating the dispensing of such orders; ... the compounding, dispensing, labeling, and administration of drugs and devices pursuant to medical prescription orders ...; ... the proper and safe storage of drugs and devices and the maintenance of proper records thereof; consultation with patients and other health care practitioners ... about the safe and effective use of drugs and devices; and the offering or performing of those acts, services, operations, or transactions necessary in the conduct, operation, management and control of a pharmacy.

Section 338.010.1 also specifies that "[n]o person shall engage in the practice of pharmacy unless he is licensed under the provisions of this chapter," except for "auxiliary personnel" who work "under the direct supervision of a pharmacist" to assist the pharmacist in the discharge of his or her duties.

Thus, under Missouri law, a pharmacy engages in the practice of pharmacy, must be licensed by the State, must operate under the supervision of one or more licensed pharmacists, and compounds, dispenses and administers medications to maintain or restore human health. Pharmacies plainly satisfy § 538.205(4)'s definition of a "health care provider." Recognizing that *pharmacies* are included in the definition of "health care providers" is particularly appropriate given that individual *pharmacists* are explicitly listed in the definition; it would be incongruous to hold that, while pharmacists constitute "health care providers," pharmacies overseen by pharmacists are not. *See P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 627 (Mo.App. E.D.1994) (noting that "public policy grounds" support the conclusion "that a professional corporation providing health care services through licensed practicioners is a health care provider for the purposes of Chapter 538"). We note that, while no Missouri state-court decision has apparently addressed whether a pharmacy is a "health care provider" under § 538.205(4), at least two federal district

court decisions have held that a pharmacy meets the statutory definition.[3]

■ 2. Honeycutt also argues that her claim against the Pharmacy was not subject to § 538.225.1's affidavit requirement because the Pharrmacy did not provide "health care services" to her. Specifically, Honeycutt argues that she was not in a health-care provider/patient relationship with the Pharmacy because she did not select the Pharmacy to provide her with medications, and because she had no direct contact with the Pharmacy in the course of her medical treatment.

"Health care services" are defined in § 538.205(5) as the "services that a health care provider renders *to a patient* in the ordinary course of the health care provider's profession." (Emphasis added.) Therefore, to decide whether § 538.225.1's affidavit requirement was triggered, we must "determine if the relationship between [the Pharmacy] and [Honeycutt] is one of health care provider and patient." *Devitre v. Orthopedic Ctr. of St. Louis, LLC,* 349 S.W.3d 327, 332 (Mo. banc 2011); *see also, e.g., Spears ex rel. Clendening v. Freeman Health Sys.,* 403 S.W.3d 616, 619 (Mo.App. S.D.2012) (first step in determining necessity of health-care affidavit is to "determine whether the relationship between the parties is that of health care provider and recipient").

■ Honeycutt and the Pharmacy were in a pharmacist-patient relationship, despite the absence of any direct contact between them. We reach this conclusion in reliance on caselaw addressing whether a *physician*-patient relationship exists. Those cases explain that

> [t]he law defines a physician-patient relationship as a consensual relationship where the patient or someone acting on the patient's behalf knowingly employs a physician who consents to treat the patient. Generally, a physician-patient relationship is created only where the physician personally examines the patient.

*Millard v. Corrado,* 14 S.W.3d 42, 49 (Mo. App. E.D.1999) (citation omitted). However, "[w]here the consultant physician does not physically examine or bill the patient, a physician-patient relationship can still arise where the physician is contractually obligated to provide assistance in the patient's diagnosis or treatment and does so." *Corbet v. McKinney,* 980 S.W.2d 166, 169 (Mo.App. E.D.1998); *see also Millard,* 14 S.W.3d at 49–50.

The Pharmacy was contractually obligated to perform the pharmacy services it provided to Honeycutt. The record includes a copy of the Pharmacy's contract with the State for "comprehensive pharmacy services," pursuant to which the Pharmacy agreed "to provide tuberculosis medication for the Department of Health and Senior Services, Section of Vaccine–Preventable and Tuberculosis Elimination." Pursuant to the agreement, the Pharmacy agreed to "fill prescription orders received from local public health agencies" for tuberculosis medications, and expressed its understanding that, "upon receipt of the medication [from the Pharmacy], the com-

---

**3.** *Henry v. Mylan Pharm., Inc.,* No. 05–CV–400092–NKL, 2005 WL 2101049, at *3 (W.D.Mo. Aug. 31, 2005) ("it would be unfair to hold a corporate pharmacy liable for the actions of its employee, the pharmacist, but not extend to the pharmacy the same statutory rights the pharmacist holds"); *Beuke v. Pharmacia & Upjohn Co.,* No. 4:99CV1606 CEJ, 2000 WL 34430453, at *2 (E.D.Mo. Sep. 14, 2000) (rejecting argument that a pharmacy is not a "health care provider" "because the term pharmacist' instead of pharmacy' is included in the definition of a health care provider"; instead concluding that "a pharmacy is a health care provider [within the "catch-all" language of § 538.205(4)], for it renders services to a patient in the ordinary course of a pharmacist's profession").

munity health nurse at the local public health agency located closest in geographic proximity to the patient's residence shall deliver [the medications] to the patient." Under the contract, the Pharmacy promised that it would "package and label all medications in accordance with State and Federal Regulations, including the Federal Food, Drug, and Cosmetic Act," and also agreed to "provide a pharmacist(s) . . . to provide consultation services via telephone" to agency employees and healthcare providers.

Thus, although Honeycutt did not have any direct contact with the Pharmacy, it is clear that the Pharmacy was obligated to fill prescriptions for tuberculosis medicine, like the prescription written for Honeycutt, pursuant to its contract with the State. Moreover, the record makes clear that the Pharmacy was not merely a bulk supplier of tuberculosis medications to the State, or to local public health agencies like the Clay County Public Health Center, leaving it to the State or the local agencies to actually dispense the drugs to individual patients. Instead, the contract specifies that the Pharmacy "shall receive a prescription order for antituberculosis medicine and the name and address of the patient requiring such medicine," and that the Pharmacy's invoicing to the State would include among other things the patient's name, birth date, and county of residence.

Thus, although the Pharmacy had no direct contact with Honeycutt, and although its identity may have been unknown to her at the time, the record reflects that the Pharmacy provided—pursuant to contract and for compensation—the same individualized pharmacy services, through other health care professionals as intermediaries, that it would have provided to Honeycutt directly if she had presented a written prescription to the Pharmacy at a retail outlet. The pharmacy services the Pharmacy provided to Honeycutt were an essential part of her medical treatment. Honeycutt was thus the Pharmacy's "patient," and received "health care services" from the Pharmacy, in the sense intended by § 538.205(5). The Pharmacy's role in this case appears to be analogous to that frequently filled by a radiologist or pathologist, who may likewise have little or no direct contact with a patient, but who instead interacts with other health-care professionals in providing services essential to the patient's successful treatment.

 3. Finally, we conclude that, however characterized by Honeycutt, her claim against the Pharmacy arises "on account of the rendering of or failure to render health care services." § 538.225.1.

> The affidavit requirement in § 538.225.1 was intended to cull at an early stage of litigation suits for negligence damages against health care providers that lack even color of merit, and so to protect the public and litigants from the cost of ungrounded medical malpractice claims. In furtherance of that goal, Missouri courts elevate substance over form when determining whether an affidavit is required. The application of § 538.225 is not controlled by the manner in which the plaintiff characterizes the claim in the petition. Instead, a pleading is judged by its subject and substance of its recitals and not its rubric or caption.

*Spears ex rel. Clendening*, 403 S.W.3d at 618–19 (citations and internal quotation marks omitted). In determining whether a particular claim triggers § 538.225, 1, we ask whether "the true claim' relates only to the provision of health care services." *Devitre*, 349 S.W.3d at 332 (citation omitted).

Here, the specifications of negligence in Honeycutt's First Amended Petition all relate to the Pharmacy's alleged failure to perform, or negligent performance of, duties imposed on the Pharmacy by virtue of its status as a licensed, professional health-care provider. Honeycutt alleges that the Pharmacy failed to adequately inform or instruct her, or the practitioners directly treating her, of (1) the appropriate administration of the medications the Pharmacy provided, (2) the dangers associated with those medications, and (3) the symptoms which might indicate an adverse reaction to the medications. These are core functions of a licensed pharmacist or pharmacy. As discussed above, § 338.010.1 defines the "practice of pharmacy" to include the "labeling and administration of drugs," and "consultation with patients and other health care practitioners ... about the safe and effective use of drugs and devices." Relying on this statutory definition and the Board of Pharmacy's implementing regulations, we have refused to "[r]elegate [a] pharmacist to the role of being merely an order filler," but have instead recognized that as part of his or her professional duties, "a pharmacist is obligated to offer to discuss with each customer or their caregiver information about the safe and appropriate use of the medication based on the pharmacist's review of available patient information." *Horner v. Spalitto*, 1 S.W.3d 519, 523, 524 n. 5 (Mo.App. W.D.1999).

Because the allegations of Honeycutt's First Amended Petition challenge the adequacy of the Pharmacy's performance of some of its central health-care functions, we conclude that her "true claim" against the Pharmacy "relates only to [its] provision of health care services." *Devitre*, 349 S.W.3d at 332.

## Conclusion

Honeycutt's claim against the Pharmacy was subject to § 538.225.1's affidavit requirement. As she has conceded, the original health-care affidavit which she filed was deficient, and she failed to cure those deficiencies within the time permitted by § 538.225.5. Given her failure to file an adequate and timely affidavit, § 538.225.6 requires that "the court shall, upon motion of any party, dismiss the action against such moving party without prejudice." Under § 538.225.6, and given the admitted deficiencies in Honeycutt's original health-care affidavit, the circuit court was under a mandatory obligation to dismiss her claim against the Pharmacy without prejudice. We accordingly make our preliminary writ of mandamus absolute, and order the Respondent to enter an order striking Honeycutt's supplemental health-care affidavit, and dismissing her claim against the Pharmacy without prejudice.

All concur.